EMMY LOU SPILLER *et al.*, Plaintiffs-Appellees, *v.* THE CONTINENTAL TUBE COMPANY, Defendant and Counterplaintiff-Appellant.—(CLIFFORD E. SPILLER, Counterdefendant-Appellee.)

Third District    Nos. 81-306, 81-290 cons.

Opinion filed April 14, 1982.—Rehearing denied May 18, 1982.

BARRY, P. J., dissenting.

Louis E. Olivero, of Peru, for appellant.

Anthony C. Raccuglia & Associates, of Peru, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Emmy Lou and Clifford E. Spiller, plaintiffs, filed a suit in La Salle County to recover on three promissory notes which defendant, Continental Tube Company (Continental), allegedly owes them. Defendant filed a counterclaim for breach of contract and sought indemnification. The trial judge dismissed the counterclaim for what he perceived was defendant's abuse of discovery. Then, plaintiffs obtained summary judgment. Defendant's appeal followed.

Spiller and Spiller Inc. (Spiller Inc.) is a small manufacturing concern. Prior to September 1, 1974, Emmy Lou and Clifford Spiller loaned that company $26,811 and $28,500, respectively. In exchange, they received two promissory notes, payable on demand, at 7% yearly interest. L. P. Industrial Corporation, wholly owned by Clifford Spiller, also loaned Spiller Inc. $37,322 on the same terms of repayment. As of September 1, 1974, these three notes were debts of Spiller Inc.

On the latter date, Spiller Inc. was sold to Continental. The purchase agreement provided that, as part of the purchase price, defendant would assume the outstanding liabilities of Spiller Inc. The contract contained a clause whereby Spiller Inc. warranted that its contractual representations were true. In another clause, Spiller Inc. stated the company was then in compliance with all Federal, State, and local laws concerning the operation of its manufacturing works.

On October 6, 1975, the Spillers obtained judgment by confession against Spiller Inc. in La Salle County on the three promissory notes. Continental was not named as a defendant in those proceedings. On February 11, 1976, Continental, as Spiller Inc.'s assignee, unsuccessfully sought to intervene and vacate such judgments, claiming it received untimely notice of such proceedings and that it had a good defense. Defendant was given three weeks to replead. Continental did not respond until September 15, 1976. Then it petitioned the court to file an amended answer wherein it claimed Spiller Inc. had breached the September 1, 1974, sales contract. Specifically, it alleged that Spiller Inc. was cited on May 1, 1974, by the Illinois Environmental Protection Agency for dumping industrial waste into the Illinois and Michigan Canal. On September 27, 1976, this petition was denied, thereby confirming the confessed judgments. No appeal(s) was taken.

The instant cause was filed November 23, 1976. Inexplicably, it lay dormant for almost four years. Originally, trial was set for June 30, 1980. It has yet to be tried.

Discovery began in March 1980. Plaintiffs filed 72 interrogatories, a request to produce, and asked the defendant to produce Richard Schreck, Bernard Hofmann, and Henry Hofmann, allegedly Continental employees, for depositions. Continental's response to these requests was deemed inadequate. Plaintiffs moved for sanctions on June 20, 1980. A hearing occurred. Some of defendant's objections to the interrogatories were sustained, most were not, and others required redrafting. At that hearing defendant stated Henry Hofmann was no longer in its employ, having retired to Florida in February 1976. Defendant was ordered by the trial judge to respond to the production request and interrogatories by September 2, 1980. Defendant finally answered on October 23, 1980. Additional compliance was directed by the court on November 18, 1980. That

is, defendant was ordered to answer certain interrogatories, verify its answer to the production request, and make arrangements for plaintiffs to depose of Mr. Schreck, and Bernard and Henry Hofmann.

On February 2, 1981, plaintiffs filed another motion for sanctions, claiming noncompliance with the November court directive. Also, the Spillers filed more interrogatories. A hearing commenced on March 10, 1981. Allegedly, at this hearing, defendant's counsel stated it would produce Henry Hofmann and the other two men to be deposed by plaintiffs on March 21, 1981. Defendant disputes this. The hearing was not transcribed.

On March 16, by letter, defendant informed the Spillers that Henry Hofmann would not be produced for a deposition but the other men could be deposed between March 23 and March 25. On March 19, plaintiffs again sought sanctions for defendant's failure to comply with the court's prior order. The Spillers wanted defendant's counterclaim dismissed. The trial court agreed, and stated:

> "This is the oldest case I have got on my docket. I have put up with your failure to supply information as long as I'm going to. You have had all the time you're going to have and I'm going to enter sanctions. And I will tell you what the sanctions are. Either these discovery depositions go forward as originally agreed on March 21, or your counterclaim will be dismissed."

The depositions did not go forward. On March 30, 1981, defendant's counterclaim was dismissed. The Spillers obtained summary judgment three days later.

This appeal presents two issues. Was dismissal of Continental's counterclaim a proper discovery sanction? Was entering summary judgment proper? On both questions the answer is no. We reverse.

This cause is earmarked by both parties' failure to comply with our supreme court's rules concerning discovery. (Ill. Rev. Stat. 1979, ch. 110A, pars. 201 through 219.) Neither party did anything in this lawsuit for four years. Defendant perpetually postponed responses to interrogatories and supplying documents pursuant to plaintiffs' production requests. Plaintiffs attempted to impose on Continental the obligation of producing a nonparty for a deposition. Finally, when defendant did not comply with plaintiffs' various discovery requests, the Spillers repeatedly brought such neglect before the trial judge. In sum, these actions manifest the squandering of time, money, and judicial resources.

■■■ For the discovery rules to possess the effect for which intended, counsel on both sides must inform themselves of what the rules say, observe them, and interpret them so justice can be administered efficiently. This means cooperation, not harassment, delay, and pettifoggery. Since Henry Hofmann was no longer an employee of defendant, Conti-

nental had no obligation to produce him for a deposition on plaintiffs' request. That is the law. (Ill. Rev. Stat. 1979, ch. 110A, par. 204(a)(3).) Plaintiffs should have requested a subpoena to compel Mr. Hofmann's attendance. The Spillers urge that Continental agreed to produce Mr. Hofmann. Continental denies this. The hearing at which this agreement supposedly transpired was not recorded. We cannot make decisions where no record exists.

In lieu of obtaining a subpoena, the Spillers began filing motions for sanctions for discovery abuse. Such legal artifice is exactly the type of conduct which our supreme court has rebuked. (*Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 565-66.) The parties, not the trial judge, must provide discovery. Information must be exchanged by the parties so the actual facts and controlling issues can be discerned. If legitimate differences exist, of course, a trial judge can intervene. But the trial court cannot become the catalyst upon which one party seeks to force the other party to act. In this regard we note the absence of affidavits accompanying plaintiffs' several sanctions motions. Such affidavits should indicate the parties have conferred about their differences and have reached an irreconcilable impasse. The rules so provide. (Ill. Rev. Stat. 1979, ch. 110A, par. 201(k).) One or two letters, without response, are insufficient to warrant dismissing a party's counterclaim. *Williams v. A. E. Staley Manufacturing Co.*

This does not mean Continental was blameless. Defendant's dilatory finesse displays a lack of participation concerning plaintiffs' interrogatories and the request to produce. Certainly, this incensed the trial judge. Even so, dismissing a claim is a severe sanction. Generally, striking a claim would be warranted where the dismissal is reasonably related to the information withheld. The sanction should address those issues affected by the refusal to comply. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 196-97.) The trial judge went beyond this. Continental had no duty to produce Henry Hofmann for plaintiffs to depose. Concerning defendant's recalcitrance on the other discovery matters, penalties such as the imposition of costs or attorney fees should have been considered.

■■ Awarding summary judgment to plaintiffs was wrong. Apparently, the trial court thought the prior, confessed judgments were a bar to Continental's counterclaim. Such a view confuses the distinction between *res judicata*, and its variant strains, estoppel by judgment and estoppel by verdict. (See generally *People v. Bone* (1980), 82 Ill. 2d 282, 287.) *Res judicata* is:

> "* * * a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of

action. [Citations.] * * * When a former adjudication is relied upon as an absolute bar to a subsequent action, the only questions to be determined are whether the cause of action is the same in both proceedings, whether the two actions are between the same parties or their privies, whether the former adjudication was a final judgment or decree upon the merits, and whether it was within the jurisdiction of the court rendering it." (*People v. Kidd* (1947), 398 Ill. 405, 408-09.)

Assuming that identity exists between Continental as assignee and Spiller Inc. as assignor, we conclude the causes of action in the respective proceedings are different. Hence, *res judicata* is inapplicable.

A cause of action is a right one party possesses for a wrongful act or omission done by another party in violation of the former right. (*Varley v. Pickens* (1981), 98 Ill. App. 3d 884, 886.) All ultimate facts necessary to prove or defend that right are part of the cause of action violation of the right creates.

In the confession of judgment proceedings two things were decided: existence of a debt owed by Spiller Inc. to the Spillers; and, whether payment was made. In those hearings no evidence was adduced on Continental's duty to pay the debts of Spiller Inc. pursuant to the contract whereby defendant purchased that enterprise. In the present suit, however, the ultimate issue to be tried is not the existence of unpaid debts to the Spillers, but whether Continental has an obligation to pay such indebtedness, and if so, how much. The right averred in defendant's counterclaim is the breach of contract by Spiller Inc. by allegedly misrepresenting the company's compliance with State environmental laws prior to September 1, 1974. Continental's liability on the promissory notes is created only by such sales contract. Proof of such can only stem from the promises and declarations the latter instrument contains. Thus, the wrong Continental complains of is clearly distinguishable from the issue of whether a debt is merely owed and unpaid.

■■ Likewise, estoppel by verdict is inapposite. This theory applies where the parties and subject matter are the same, even if the causes of action in the two suits are different. (Accord, *Skolnik v. Petella* (1941), 376 Ill. 500, 503.) In the prior proceedings the existence of the debt owed by Spiller Inc. was established. Such cannot be relitigated in the cause at bar. But the facts surrounding the alleged breach of contract, and any consequential damages flowing therefrom were not litigated. Estoppel as to such facts, the centerpiece of defendant's counterclaim, does not result.

■■ If the material facts admit of more than one conclusion or inference, a motion for summary judgment must be denied. As hereinbefore stated, the dismissal of the counterclaim was error. Issues of fact must be resolved based on the contract between Spiller Inc. and Continental. The

possibility of damages due to Spiller Inc.'s apparent misrepresentation, and therein a setoff against the liabilities defendant assumed in purchasing Spiller Inc. is very real. These inquiries concern facts in dispute based on the pleadings and supporting documents pertinent thereto.

For the reasons stated, the judgments of the Circuit Court of La Salle County are hereby reversed. This cause is remanded to that court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STOUDER, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

I cannot agree with my colleagues that it was error to dismiss defendant's counterclaim as a sanction for failing to comply with orders of the trial court relating to discovery. The majority opinion has overlooked some pertinent facts and has, in my view, preempted the decision-making authority of the trial court in complete disregard for the basic principle of appellate review, that the party claiming error has the burden of establishing that error occurred. Error is never presumed by the reviewing court but must be affirmatively shown by the record. *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

Henry Hoffmann was president of defendant corporation at the time of the transactions between the plaintiffs and defendant, and Hoffmann personally communicated to the Spillers notice that the plant was not in compliance with environmental laws of Illinois. By the time this lawsuit reached the discovery stage, Henry Hoffmann had retired.

The following chronology of events is relevant to this appeal:

1. August 9, 1979—Case was set for trial on June 30, 1980.

2. March 17, 1980—Plaintiff served interrogatories and a request to produce upon defendant.

3. June 20, 1980—Plaintiff filed a motion for sanctions for defendant's failure to furnish discovery. A hearing was held, and various orders were entered.

4. June 23, 1980—Upon motion of defendant for substitution of judge, case was assigned to Judge Hoffman, who ordered trial reset for March 30, 1981, with all discovery to be concluded by February 1, 1981, "no exceptions."

5. October 23, 1980—Plaintiffs filed a second motion for sanctions.

6. November 18, 1980—Defendant was ordered to furnish additional answers.

7. January 13, 1981—Defendant's counsel wrote to plaintiffs' attorney supplying supplemental answers to interrogatories (unverified) and stating that counsel would "make the necessary arrangements" for the discovery deposition of Henry Hoffmann "as has been discussed."[1]

8. February 2, 1981—Plaintiffs filed a third motion for sanctions.

9. March 10, 1981—Parties apparently agreed to the depositions of three persons, including Henry Hoffmann, on March 21, 1981, in Pennsylvania.

10. March 12, 1981—Notices of these three discovery depositions were filed.

11. March 16, 1981—Defendant's counsel informed plaintiffs' attorney that of the three witnesses to be deposed, Henry Hofmann would never be available and the other two would only be available between March 23 and 25, 1981.

12. March 19, 1981—Plaintiffs filed a fourth motion for discovery sanctions, and the court ruled: "Either these discovery depositions go forward *as originally agreed* on March 21, or your counterclaim will be dismissed." (Emphasis added.)

13. March 30, 1981—The dismissal order was entered.

In reversing the dismissal of the counterclaim, the majority relies upon the fact that the record does not contain a transcription of any oral agreement by defendant to produce Henry Hofmann. The majority does not mention that the trial court stated for the record that defendant, in order to avoid sanctions, agreed on March 10 in chambers to produce Hofmann on March 21 for a deposition. That statement by the court is corroborated in the record by the notice which was sent to Hofmann on March 12 and by an earlier letter from defendant's counsel stating that arrangements for Hofmann's deposition would be made. The burden is on defendant to show by positive evidence that the trial court was wrong and that defendant did not agree to produce Hofmann. Defendant has made no such showing, and I believe the finding of the trial court is sufficiently supported in the record to be affirmed. I must decline to substitute my judgment for that of the trial court.

I also wish to state that I do not agree that plaintiffs abused the discovery process by seeking sanctions for this out-of-State defendant's noncompliance with discovery requests. Far from being a "legal artifice," a motion for sanctions is the appropriate remedy to use when confronted with an opponent who uses delaying tactics to gain additional time on the

---

[1] This letter is a part of some material which defendant has sought to file in this court pursuant to a motion to amend the record on appeal. That motion was taken with the case and should have been granted since the material is relevant. It is the record of defendant's agreement to furnish Hofmann for a deposition.

eve of trial. When one party refuses to provide discovery, the trial judge is supposed to "become the catalyst" for compelling compliance, as was properly done here.

I believe plaintiffs' actions here were appropriate to protect their interest in preparing adequately for trial and to prevent defendant from delaying the case in defiance of court orders. The experienced and respected trial judge concluded that defendant has "so flaunted the jurisdiction of this court that the process of judicial administration in this case had completely broken down and failed." (March 30, 1981, dismissal order.) Such a grave finding should not be treated lightly, especially when supported by a record showing a pattern of delays in furnishing discovery over a period of more than a year.

Finally, I would note that the absence of affidavits accompanying plaintiffs' motions for sanctions was not raised in the trial court, and any such error was, therefore, waived for purposes of review. *Fullerton v. Robson* (1978), 61 Ill. App. 3d 93, 377 N.E.2d 1044.

Since I would affirm the dismissal of the counterclaim, the factual issues raised by the counterclaim would be eliminated. Therefore, summary judgment for the plaintiffs would not be erroneous. I would also affirm the judgment for plaintiffs.