(No. 56892.— )

EMMY LOU SPILLER *et al.*, Appellants, v. THE CONTINENTAL TUBE COMPANY, Appellee.

*Opinion filed March 25, 1983.*

Anthony C. Raccuglia & Associates, of Peru, for appellants.

Louis E. Olivero, of Peru, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

The plaintiffs in this case, Emmy Lou and Clifford E. Spiller, were the owners of two corporations, Spiller and Spiller, Inc., and L. P. Industrial Building Corporation. Emmy Lou Spiller, individually, and the L. P. corporation loaned money to Spiller and Spiller, Inc., in return for the promissory notes of the corporation. The L. P. corporation was subsequently dissolved, and its assets transferred to Clifford Spiller.

On September 1, 1974, defendant, the Continental Tube Company (Continental), entered into an "Agreement for Purchase of Assets" with Spiller and Spiller, Inc., *et al.*, whereby defendant allegedly agreed to purchase the assets and assume the liabilities of that company. The document was signed on behalf of defendant by Henry Hofmann, then its president and also vice-president of Hofmann Industries, defendant's parent corporation. Clifford Spiller, then president of Spiller and Spiller, Inc., executed the contract on behalf of the corporation and also as "named stockholder." Among the then-existing liabilities were the several promissory notes earlier referred to.

In October 1975 judgments were confessed on the notes in the circuit court of La Salle County against Spiller and Spiller, Inc., and in favor of the plaintiffs in the amount of $64,143.45. Continental was not a party to that action, but Henry Hofmann was thereafter served with a summons to confirm the judgments by confession. He appeared specially and moved to quash the service and vacate the judgments. Plaintiffs objected that Henry Hofmann was not a party to the litigation and hence had no standing to seek the relief requested. Hofmann's motion was denied, and defendant Spiller and Spiller, Inc., was given 21 days to file any additional motions. Continental, as assignee of Spiller and Spiller, Inc., then filed a motion to vacate the confession judgments, plaintiffs objected, the motion was denied, and defendant was given 21 days to answer or otherwise plead. The record indicates that Continental then filed a motion for leave to file instanter an amended answer which alleged, as a further defense, that plaintiffs had breached certain representations in the contract regarding their compliance with environmental-protection requirements, and that had Continental been aware of such violations, it would not have executed the agree-

ment, and was not bound thereby because of lack of mutuality of obligation and remedy. The court allowed Continental to file the amended answer, and plaintiffs moved to strike it and confirm the judgment by confession, arguing that Continental's allegation concerning the breach of contract was not a defense to the obligation of Spiller and Spiller, Inc., on the notes. The trial court eventually entered an order denying all motions, striking all defense pleadings, and confirming the judgments by confession. No appeal was taken.

Plaintiffs brought the action now before us in November 1976, alleging that Continental's contractual assumption of the liabilities of Spiller and Spiller, Inc., obligated it to pay the judgments rendered on the notes. Continental answered, denying liability, and filed its counterclaim seeking indemnification in the amount of $140,000 for an alleged breach of contract involving the environmental misrepresentations earlier referred to. After dismissing the counterclaim in 1981 as a sanction for noncompliance with a discovery order, the trial court, believing the earlier confession of judgment proceedings were *res judicata,* entered summary judgment for plaintiffs. A divided appellate court reversed and remanded (105 Ill. App. 3d 790), and we granted plaintiffs leave to appeal.

Between November 1976, when plaintiffs filed their complaint, and 1979, numerous motions, objections and amendments to pleadings were filed. A status conference was held on February 6, 1979, and the case was continued until May 15, 1979, at which time the parties were to advise the court on their efforts to complete discovery. On August 9, 1979, another status conference was held, and the case was set for trial on June 30, 1980. Not until some seven months later, on March 17, 1980, did plaintiffs commence discovery by filing a request to produce and 72 interrogatories. On April 9 defendant's attorney wrote a letter to plaintiffs' attorney advising

him that the person most knowledgeable regarding answers to the interrogatories had retired from the company and lived out of State. An additional 30 days to answer the interrogatories were requested. On May 16 plaintiffs' attorney, having received no responses yet, wrote to defendant's attorney advising him that, given the impending trial date, unless the interrogatories and request to produce were answered in 15 days, he would move for sanctions. A few days later, on May 21, defendant's attorney again wrote to plaintiffs' attorney advising him that the answers to the interrogatories were near completion and requesting an additional 15 days to finalize them. Plaintiffs apparently received unverified answers on June 6; verified answers and several objections were filed on June 18. On June 15, plaintiffs filed a notice to take the discovery deposition of Henry Hofmann, and on June 20, plaintiffs filed the first of several motions for sanctions. In this motion, plaintiffs stated that defendant had not complied with the request to produce and that the answers to the interrogatories were inappropriate, unresponsive and incomplete. Further, plaintiffs complained that defendant had not cooperated with respect to scheduling the deposition of Henry Hofmann. Plaintiffs asked that a default judgment be entered against defendant on both the complaint and the counterclaim or, alternatively, for a less drastic sanction. Defendant responded on June 23, objecting to plaintiffs' motion on several grounds. Defendant stated that its objections to certain interrogatories were valid, that its answers were complete, that plaintiffs' appropriate remedy under this court's rules was to file a motion to compel compliance before seeking sanctions so as to allow the trial court to determine the validity of defendant's objections, and, finally, that Henry Hofmann was no longer an employee of Continental and defendant could not be held to have unreasonably refused to comply with the request

since it had no obligation to produce him.

Thereafter numerous motions and objections were filed by the parties, hearings held and orders entered by the trial judge, who, it is clear, was attempting to expedite the proceedings and trial of the case. In view of our conclusion it would unnecessarily extend this opinion were we to detail those actions, and we deem it sufficient to note that both parties could have proceeded much more expeditiously than they did.

The question crucial to our disposition is whether defendant had agreed to produce Henry Hofmann for a deposition to be taken by plaintiffs in Pennsylvania. Plaintiffs concede that defendant had no duty to produce for deposition purposes an individual not affiliated with defendant or its parent corporation. (See 73 Ill. 2d R. 204(a)(3).) They do not dispute defendant's assertion that Hofmann had severed all connection with defendant and with Hofmann Industries, defendant's parent corporation, although they seem to intimate that defendant in some unexplained manner retained some degree of control. It is plaintiffs' position that defendant agreed in a letter which is not in the record and in an unrecorded in-chambers conference on March 10, 1981, that it would produce two employees and Hofmann for depositions in Pennsylvania. Defendant denied making any commitment beyond producing the two employees and making a good-faith effort to produce Hofmann, and maintained that it had been unable to arrange the latter. The trial judge on March 19, indicating his recollection was that defendant had agreed in the unrecorded conference to produce Hofmann, entered a written order requiring production on March 21. He dismissed defendant's counterclaim on March 30 for violation of that order. In doing so, we believe he erred. This record contains no agreement, stipulation or promise by defendant to produce Hofmann, and defendant denies that it made any

commitment beyond a good-faith effort to secure Hofmann's cooperation which it could not accomplish. In these circumstances the trial judge's recollections or impressions of the discussion in chambers cannot be relied upon to supplement a record devoid of any other evidence of such agreement. (*Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 432.) Similarly plaintiffs' reliance on the January 13 letter, not in the record, is misplaced, although we would observe that defendant, which contends that the letter actually supports its position, moved in the appellate court to amend the record to include this letter but its motion was denied. Although plaintiffs assert here that their objection in the appellate court to defendant's amending the record did not relate to the letter, we note they did not seek to amend the record in this court to include this document.

At a subsequent hearing on defendant's motion to reconsider the dismissal of the counterclaim, the court indicated that the counterclaim was dismissed not only because of the failure to produce Hofmann but also because the court believed that defendant "failed to in any way cooperate" with respect to discovery. Thus, plaintiffs argue here that the sanction should be upheld because of a continuous course of conduct in which defendant unreasonably refused to cooperate in complying with discovery requests. Our difficulty with this argument is twofold. First, it is not completely compatible with the trial court's initial announcement at the time of dismissal that it was motivated by defendant's failure to produce Hofmann; secondly, the discovery problems were not solely of defendant's making. Had they been, the court would, of course, have been fully justified in imposing an appropriate sanction. Such sanctions, however, must be proportionate to the gravity of the violation (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67), and this record, notwithstanding the judge's later remarks, simply

does not support a finding that defendant "failed to in any way cooperate" with discovery. Rather, the record demonstrates that the delays and the difficulties in completing discovery prior to the date set for trial were a result of the actions of both parties.

Plaintiffs did not commence discovery until March 17, 1980, 3½ years after suit had been filed and only three months before the date set for trial, although that date had been scheduled the previous August. While defendant was dilatory in responding to the requests and verifying answers, when the answers to the interrogatories were filed plaintiffs immediately moved for sanctions primarily because they were dissatisfied with the responses. In doing so they ignored the requirements of our Rule 201(k) (87 Ill. 2d R. 201(k)), which we have recently emphasized is not precatory (*Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 566). Contrary to plaintiffs' assertion here, the record does not indicate that they made reasonable attempts to resolve their differences with defendant without judicial intervention. Nor can we conclude that either party acted in a spirit of cooperation with respect to discovery, despite our repeated admonitions and statements urging the bar to use the tools of discovery in a manner consistent with their purposes rather than for purposes of obstruction and harassment. (*E.g., Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 282; *Williams v. A. E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 564-65; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 197.) Cooperation between counsel and good-faith efforts by them to resolve disputes without judicial intervention are essential to the efficient and expeditious administration of justice in this State, and we trust that, upon remand, the parties and counsel will proceed accordingly.

We are required to review the trial court action solely

on the record (*People v. Edwards* (1978), 74 Ill. 2d 1, 7, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862), and on this record dismissal of the counterclaim cannot be upheld.

The question remaining is whether plaintiffs were entitled to summary judgment on the basis of *res judicata* or estoppel principles as the trial judge held. Those judicially created doctrines "are *** designed to protect litigants from the burden of retrying an identical cause of action or issue with the same party or privy, and to enhance judicial economy by prohibiting repetitive litigation." (*People v. Bone* (1980), 82 Ill. 2d 282, 286, *cert. denied* (1981), 454 U.S. 839, 70 L. Ed. 2d 120, 102 S. Ct. 145, citing *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326, 58 L. Ed. 2d 552, 559, 99 S. Ct. 645, 649.) The doctrine of *res judicata* provides that " 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.' " (*La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 528, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668, quoting *People v. Kidd* (1947), 398 Ill. 405, 408.) The principle extends not only to questions which were actually litigated but also to all questions which could have been raised or determined. (*People v. Bone* (1980), 82 Ill. 2d 282, 287, *cert. denied* (1981), 454 U.S. 839, 70 L. Ed. 2d 120, 102 S. Ct. 145; *Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 582-83; see *Cromwell v. County of Sac* (1877), 94 U.S. 351, 352, 24 L. Ed. 195, 197.) Where, however, the second action is between the same parties but upon a different claim or demand, the former action operates as an estoppel by verdict or judgment only as to those matters in issue, a determination of which was necessary to the finding or

verdict rendered in the initial action. (*People v. Borchers* (1977), 67 Ill. 2d 578, 582-83; *People v. Grayson* (1974), 58 Ill. 2d 260, 263, *cert. denied* (1975), 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001; *People ex rel. Chicago & Eastern Illinois R.R. Co. v. Fleming* (1969), 42 Ill. 2d 231, 235; *Skolnik v. Petella* (1941), 376 Ill. 500, 503; *Hoffman v. Hoffman* (1928), 330 Ill. 413, 417.) Even had the parties been the same in the confession judgments and here, we agree with the appellate court that *res judicata* principles are inapplicable because the actions or claims in the two suits are not the same. Neither the issues raised by way of defense to the second lawsuit nor the issues created by defendant's counterclaim were originally adjudicated so as to trigger estoppel principles.

Plaintiffs in their original action sued Spiller and Spiller, Inc., to recover on the promissory notes. Continental was not a defendant, and the litigation did not involve its alleged liability on those notes pursuant to the sales contract, the validity of the contract or plaintiffs' alleged breach of contract. That litigation involved only the existence of a debt owed by the Spiller company to Clifford Spiller, successor in interest to L. P. Industrial Building Corporation, and Emmy Lou Spiller. It is true that Continental subsequently attempted to open the judgments by confession, and raise as defenses the issues raised here in their counterclaim. However, as plaintiffs themselves argued in the prior lawsuit, Continental was not named as a defendant in that case, did not appear until after judgment, and its allegations concerning the contract or whether it assumed the obligations of Spiller and Spiller, Inc., were not a defense to that company's obligation on the notes. Thus, the suits involve different claims and *res judicata* is inapplicable.

Similarly, estoppel principles will not bar defendant from presenting its contemplated defense or its counterclaim to this action. Although the procedural history in

the prior lawsuit is not altogether clear, the action upon which plaintiffs rely is the court's final order denying all motions and striking all pleadings of defendant and Continental and confirming the judgments by confession. That order cannot be characterized, as plaintiffs suggest, as an adjudication of the merits of the alleged contractual obligations of Continental or plaintiffs' alleged misrepresentations or breaches of contract, because those issues could not have been considered in that action. Plaintiffs' reliance upon our Rule 273, which provides that an involuntary dismissal of an action is, with certain exceptions, an adjudication on the merits, is obviously misplaced. (73 Ill. 2d R. 273; see *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 122.) The court's order denying Continental's motions to vacate the judgments by confession and striking its pleadings was clearly not the dismissal of an action; it was simply a determination by the court that Continental's allegations did not present a *prima facie* defense on the merits to plaintiffs' claim against Spiller and Spiller, Inc., on the notes. See 73 Ill. 2d R. 276, governing a motion to open judgment by confession.

Plaintiffs present additional arguments, not considered by the trial judge, in urging that we affirm the entry of summary judgment in their favor. Since the cause is being remanded, however, and defendant's counterclaim reinstated, we judge it appropriate that the trial court consider those arguments in that context.

For the reasons stated, the appellate court's judgment is affirmed, and the cause is remanded to the circuit court of La Salle County for further proceedings consistent with this opinion.

*Affirmed and remanded.*