*In re* MARRIAGE OF CAROLE LAI, Petitioner-Appellee, and ANTONIO LAI, Respondent-Appellant.

First District (2nd Division)   No. 1—88—3329

Opinion filed December 19, 1989.

Joel Ostrow, of Chicago, for appellant.

LeVine, Wittenberg, Eisner, Newman & Silverman, Ltd., of Homewood (Howard LeVine and Ross Shugan, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent-appellant, Antonio Lai, appeals the dismissal of his petition for rehearing as to his default judgment and seeks review of the underlying judgment for dissolution of marriage. He raises as issues whether: (1) the doctrine of *res judicata* precluded the circuit court from hearing his petition for rehearing on the merits; (2) the circuit court erred in defaulting respondent as a sanction for a discovery violation; and (3) the judgment for dissolution of marriage is so fundamentally unjust as to require reversal.

Carole and Antonio Lai were married on June 10, 1973. A daughter, Carla, was born December 22, 1976. Carole filed a petition for dissolution of marriage on March 10, 1982. On November 12, 1982, the circuit court awarded Carole temporary custody of Carla; gave Carole exclusive use of the marital home held in joint tenancy by the couple; and directed Antonio to leave the house by December 1, 1982.

On May 31, 1983, the court ordered Antonio to pay $45 per week in temporary child support to Carole. After several attorney substitutions, Antonio filed a motion in June 1983, seeking to take Carla to Italy to visit her dying grandmother. Orders entered July 15 and July 26, 1983, directed both parties to accompany Carla to Italy for three weeks.

On August 23, 1983, Carole filed a petition for a rule to show cause alleging that, while in Italy, Antonio kidnapped Carla, in violation of the July court orders. An agreed order, dated September 29, 1983, required that the child be returned to Carole and Antonio's visitation rights be restored to him. Antonio had the child returned to the United States in October; however, he remained in Italy until April 5, 1984. The order later was vacated after Carole alleged that she agreed to it under duress to ensure Carla's release, and Antonio was ordered to pay all the attorney fees that Carole incurred while she attempted to locate Carla.

On December 29, 1983, the circuit court held a hearing and found Antonio in willful contempt of the July travel agreement. On January 31, 1984, the court found Antonio in violation of the child support order and sentenced him to one day in jail for every day the violation continued, retroactive to January 8, 1984. Also on January 31, 1984, pursuant to Carole's request, the circuit court required Antonio's employer to pay his employee pension over to Carole.

Carole's attorney scheduled a deposition for Antonio on February 16, 1984. Antonio, still in Italy, failed to appear. Carole immediately filed a motion for sanctions against him and asked the court to set a date certain for the deposition. The court scheduled the deposition two days thereafter, on March 29, 1984, which Antonio again failed to attend. The court struck his pleadings and entered a default on April 2, 1984. On April 13, 1984, Antonio's then counsel, Michael Penn, petitioned that Carole pay his fees and filed a motion to withdraw alleging that Antonio failed to maintain communication with him. A notation on the fee petition states that a mailgram was sent to Antonio in Italy on March 31, 1984. Further, the petition shows that Penn maintained a correspondence with Antonio and attempted to keep his client fully abreast of the developments in the litigation, including the receipt of a Supreme Court Rule 201(k) letter. (107 Ill. 2d R. 201(k).) Another attorney substituted as Antonio's counsel.

A prove up on the default was held on May 1, 1984. The court entered judgment, making the following dispositions: (1) sentenced Antonio to 118 days in jail; (2) provided Carole with custody of Carla with no visitation; (3) gave Carole the marital home and the family car, both owned jointly by the couple; and (4) incorporated all prior orders into the judgment. Antonio's attorney fee petition was to be heard separately with a later hearing date. Antonio filed a motion to set aside the judgment on May 10, 1984, alleging that he did not know he was unrepresented at the time the default was entered; his limited knowledge of the English language rendered communication with his attorney difficult; he remained in Italy because his attorney told him he would be arrested if he returned; and he returned to the United States on the advice of an Italian lawyer. Carole objected on the ground that the default had been entered more than 30 days before the motion was filed. The circuit court denied the motion on September 27, 1984. Antonio filed a petition to vacate the order pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) (Code), on December 5, 1984, which was denied. On appeal from that order to this court, we ruled that the orders theretofore entered were not yet appealable.

On March 18, 1988, the attorney fee petition was disposed of by an order which directed Antonio to pay Penn $900. Subsequently, he filed a petition for rehearing under section 2—1203 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203), alleging that he was improperly defaulted as a discovery sanction and attacking the substantive provisions of the dissolution order. On November 1, 1988, the circuit court ruled that, under the doctrine of *res judicata*, the May 1, 1984,

order could not be considered since the issues had been dealt with during the arguments on the pre-appeal motions. Counsel objected that the section 2—1401 petition was a nullity since judgment only became final on March 18, 1988, with the disposition of the attorney fee issue.

Antonio initially contends that the circuit court erred when it refused to hear the merits of his petition for rehearing under section 2—1203 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203).

Antonio's first motion, filed on May 10, 1984, following default and judgment, was an unlabeled petition to set aside judgment, which appears to fall under section 2—1301(e) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(e)). The motion raised Antonio's lack of counsel and inability to adequately speak English, among other issues. After this motion was denied, Antonio filed a section 2—1401 petition alleging that the child support arrearage figure included in the dissolution judgment was fraudulent. He also challenged the substantive aspects of the divorce decree in regard to valuations of both the home and the marital assets and expenditures, supported by an affidavit stating that he complied with the temporary child support by paying $450. He averred that he was in Italy during the pendency of the litigation and was led to believe that no activity was being undertaken in the case. Attached to the affidavit were copies of checks made out to Carole signed by Antonio, totaling $505 in addition to two checks to Carole from Antonio's employer, representing the pension plan. These checks totaled $8,630.25.

■ Antonio maintains here, as he did below, that the December 5, 1984, section 2—1401 petition should not have been ruled upon, since the dissolution judgment did not become fully adjudicated until March 18, 1988. (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036.) Section 2—1401 is a procedural device to vacate a final order or judgment where it would achieve justice and fairness while avoiding an unconscionable result. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 499 N.E.2d 1381; Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) We are of the opinion that Antonio's section 2—1401 petition to set aside the judgment was premature and should have been dismissed. See *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 470 N.E.2d 290.

After the judgment became fully adjudicated, respondent filed a timely petition for rehearing under section 2—1203 of the Code, alleging that (1) the court improperly defaulted the respondent; (2) the judgment was contrary to all applicable law; (3) the trial judge was vindictive toward the respondent; (4) the award of attorney fees was

against the manifest weight of the evidence; and (5) other aspects of the dissolution of judgment, namely, visitation, pension distributions and the contempt sentence, were contrary to both the applicable law and the evidence of the case. The circuit court ruled that the appealability of the May 1, 1984, judgment "does not invalidate the adjudication of the issues and the reality of all that, exists in orders [and pre-appeal orders, including the post-trial hearings]." The court held that the doctrine of *res judicata* applied to all the issues presented in the petition for rehearing except the issues as to Penn's attorney fees. Consequently, the petition for rehearing was dismissed on *res judicata* principles as to all issues except attorney fees; and, the circuit court denied the petition for rehearing as to these fees, specifically finding that Penn "had a terrible situation to deal with. *** [A]nd he did it the best he could."

■ Our supreme court has ruled that until all ancillary issues of a dissolution proceeding are resolved, the petition is not fully adjudicated. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119, 449 N.E.2d 137 (*Leopando*).) Here, too, the pre-March 18, 1988, orders did not fully adjudicate the dissolution proceedings. *Leopando* has been construed in several appellate court decisions as precluding consideration of issues which may be interrelated until all have been decided, including those situations where attorney fees are still under consideration. (*In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 453 N.E.2d 90; *Pruitt v. Pruitt* (1984), 129 Ill. App. 3d 50, 471 N.E.2d 1051; *In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 511 N.E.2d 1157.) In *Piccione*, the appellate court observed (158 Ill. App. 3d at 963):

> "Since attorney fees are dependent upon and integrally related to decisions regarding the financial resources of each of the parties, a disposition of their allocation should be made before the reviewing court can properly assess the trial court's decision regarding the child-support orders."

Of course, here the issue is not finality for purposes of appeal, but finality for purposes of *res judicata*, based upon the fact that post-order motions were made and ruled upon before the attorney fee issue had been resolved. In *Leopando* our supreme court noted (96 Ill. 2d at 119):

> "A petition for dissolution *advances a single claim*; that is, a request for an order dissolving the parties' marriage. *The numerous other issues involved*, such as custody, property disposition, and support are merely questions which *are ancillary to the cause of action*. (See *In re Marriage of Lentz* (1980), 79 Ill.

2d 400, 409 (Ward, J., concurring).) They do not represent separate, unrelated claims; rather, *they are separate issues relating to the same claim.* In fact, it is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding. Should the trial court decline to grant the petition for dissolution, no final relief may be obtained relevant to the other issues involved. On the other hand, where a dissolution of marriage is granted, a determination as to which party receives custody will necessarily affect how much, if any, support and maintenance are paid. *Practically speaking, then, until all of the ancillary issues are resolved, the petition for dissolution is not fully adjudicated."* (Emphasis added.)

The circuit court in the present case, in order to fully adjudicate the petition for dissolution and its ancillary issues prior to the award of attorney fees, was required to consider the parties' financial resources. This issue was clearly interrelated with issues previously considered, including child support, Carole's attorney fees, and disposition of valuable assets, such as the marital home, automobile and Antonio's pension proceeds.

Does it make a difference that the issue remaining to be decided in 1988 was the amount of money due as fees for Antonio's own lawyer, Michael Penn? The petition for fees sought payment from Carole, noting that she "is employed and earns a substantial salary, and with the division or contemplated division of marital assets is well able to pay," whereas Antonio was unemployed. Carole objected, relying upon section 508(a) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 508(a)), which authorizes the imposition of attorney fees for maintenance *or defense* of any proceeding under the Act "after considering *the financial resources of the parties,"* among other factors. (Emphasis added.) (See, *e.g., In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1121, 421 N.E.2d 1308; *In re Marriage of Stewart* (1979), 79 Ill. App. 3d 1125, 398 N.E.2d 1199.) To foreclose consideration of the totality of interrelated circumstances by construing post-*order* determinations, rather than post-*judgment* determinations on the basis of *res judicata* principles would preclude the full and fair adjudication of issues which may bear an interrelationship, if not an interdependency, and would avoid the prescribed consideration of "all matters incident to the dissolution *in a single judgment."* (Emphasis added.) *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 197-98, 443 N.E.2d 541.

■■ The doctrine of *res judicata* contemplates that "a cause of

action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated," except on appeal. (*Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 462, 375 N.E.2d 925.) In the present circumstances, all matters incident to the dissolution were not concluded and, therefore, not final. The doctrine of *res judicata* should not have been applied to dismiss the 1988 petition for rehearing. The circuit court should have ruled on the merits of respondent's petition, which in fact raised some new issues not previously raised in the earlier untimely petitions. The cause must be reversed and remanded for proceedings consistent with this opinion.

In view of our disposition in this matter, we are not, at this time, required to consider other issues raised in this appeal.

Reversed and remanded.

BILANDIC, P.J., and DiVITO, J., concur.