*In re* MARRIAGE OF CAROLE LAI, Petitioner-Appellee, and ANTONIO LAI, Respondent-Appellant.

First District (2nd Division)   No. 1—92—0670

Opinion filed September 7, 1993.

Marc L. Kramer, of Chicago, for appellant.

LeVine, Wittenberg & Shugan, Ltd., of Homewood (Ross B. Shugan and Howard M. LeVine, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent, Antonio Lai, appeals from a judgment for dissolution of marriage. Presented as issues for review are whether the circuit court abused its discretion in defaulting Antonio as a sanction for a discovery violation, and the distribution of marital assets is so fundamentally unjust as to require reversal. For reasons which follow, we reverse and remand, and vacate in part.

Carole and Antonio Lai were married on June 10, 1973. Carole filed a petition for dissolution of marriage on March 10, 1982. One child, Carla, was born of this marriage.

The circuit court awarded temporary custody of Carla to Carole and ordered Antonio to pay $45 per week in temporary child support. In June 1983, Antonio filed a motion seeking permission to take Carla to Italy to visit her dying grandmother. Orders entered July 15 and 26 directed both parties to accompany Carla to Italy for three weeks.

On August 23, Carole filed a petition for a rule to show cause alleging that, while in Italy, Antonio kidnapped Carla in violation of the July court orders. An agreed order, dated September 29, required that Carla be returned to Carole and Antonio's visitation rights be restored to him. Antonio had Carla returned to the United States in October; however, he remained in Italy until April 5, 1984. The order later was vacated after Carole alleged that she agreed to it under duress to ensure Carla's release, and Antonio was ordered to pay all the attorney fees and expenses that Carole incurred while she attempted to locate Carla.

On December 29, 1983, the circuit court held a hearing and found Antonio in wilful contempt of the July travel agreement. On January 31, 1984, the court found Antonio in violation of the child support or-

der and sentenced him to one day in jail for every day the violation continued, retroactive to January 8.

On February 2, 1984, Carole's attorney served Antonio's lawyer, Michael Penn, with interrogatories and a notice of deposition. Antonio's deposition was scheduled for February 16 in Harvey, Illinois. Antonio, still in Italy, failed to appear. On March 27, Carole filed a motion for sanctions against Antonio for his failure to answer the interrogatories and appear at the deposition. The motion, noting the case was set for trial on April 2, requested the court to set an immediate date for Antonio's deposition and, if he failed to appear, to strike his pleadings and hold him in default. The motion asserted that a Supreme Court Rule 201(k) (134 Ill. 2d R. 201(k)) (Rule 201(k)) letter had been sent to Penn regarding Antonio's compliance with discovery, and that it was apparent Antonio would not comply. The court scheduled the deposition two days thereafter, on March 29. That order stated that if Antonio failed to appear the court would strike his pleadings and hold him in default. Antonio failed to attend this court-ordered deposition. On March 30, the case was continued by agreed order to April 2. On April 2, the court struck Antonio's pleadings and entered a default for Antonio's failure to attend the court-ordered deposition.

On April 13, Penn petitioned that Carole pay his fees and filed a motion to withdraw as Antonio's counsel. Notations on the fee petition indicate that Penn, *inter alia*, (1) forwarded the February 2 interrogatories and notice of deposition to Antonio in Italy on February 3, (2) advised Antonio by mail of a Rule 201(k) letter on March 9, and (3) sent a mailgram to Antonio on March 31. There was no indication, however, that Penn advised Antonio of the court-ordered deposition on March 29.

A prove up on the default was held on May 1. The court entered judgment, granting the dissolution of marriage and making the following dispositions: (1) sentenced Antonio to 119 days in jail for his failure to pay court-ordered child support; (2) awarded Carole custody of Carla with no visitation; (3) gave Carole the marital home and the family car, both owned jointly by the couple; and (4) incorporated all prior orders into the judgment.[1] Penn's attorney fee petition was to be heard separately at a later date.

---

[1] The judgment found a child support arrearage of $5,255, representing $4,670 found in the January 31, 1984, order and an additional 13 weeks of child support. This finding is incorrect; rather, the December 29, 1983, order totaled $4,670, and it was for expenses associated with Carla's kidnapping, not child support.

Another attorney substituted as Antonio's counsel on May 10, and filed a motion to set aside the judgment, alleging that Antonio did not know he was unrepresented when the default was entered; his limited knowledge of the English language rendered communication with his attorney difficult; he remained in Italy because his attorney told him he would be arrested if he returned; and he returned to the United States on the advice of an Italian lawyer. The circuit court denied the motion. On December 5, Antonio filed a petition to vacate the order pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992))) (Code), which was denied. On appeal from that order to this court, we ruled that the orders theretofore entered were not yet appealable.

On March 18, 1988, Penn's attorney fee petition was disposed of by court order. Subsequently, Antonio filed a petition for rehearing under section 2—1203 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203 (now 735 ILCS 5/2—1203 (West 1992))), alleging that he was improperly defaulted as a discovery sanction and attacking the substantive provisions of the dissolution order. On November 1, the circuit court ruled that, under the doctrine of *res judicata*, the May 1, 1984, order could not be considered since the issues had been dealt with during the arguments on the pre-appeal motions. On appeal, this court reversed and remanded holding that the doctrine of *res judicata* should not have been applied to dismiss the 1988 petition for rehearing, and that the circuit court should have ruled on the merits of Antonio's petition. *In re Marriage of Lai* (1989), 192 Ill. App. 3d 807, 813, 549 N.E.2d 639.

On February 14, 1991, a hearing on the petition for rehearing was held. Antonio testified that he never received a letter from Penn notifying him that he had a deposition date. On April 2, 1984, he received a mailgram from Penn, which stated:

"Your case is set for trial on April 2, 1984. You have failed to comply with discovery and your wife seeks to hold you in default. Your profit-sharing money has been turned over to your wife. Send $1,500 immediately or I will no longer represent you as your attorney."

He returned to the United States on April 5, 1984. He had been in Italy since August 1983 caring for his sick mother.

Both Antonio and Carole testified that their marital assets consisted of their home, Antonio's pension, two cars, and 100 shares of Greyhound stock.

On February 11, 1992, the circuit court entered a written opinion denying the petition for rehearing. It found the sanction of default proper given: (1) the motion for sanctions alleged a Rule 201(k) letter had been sent to Antonio and it was apparent he would not comply; (2) the court set another deposition date and specifically warned that a default would be entered for a failure to comply; (3) the case had been given a final date for assignment to trial of April 2, 1984; (4) the case was two years old; and (5) Antonio had been out of the country since July 1983 and "had occasioned his own absence, prolonged it," and should not "be excused from the consequences of it."

As to whether the marital estate was distributed inequitably, the circuit court noted that it ordered a significant portion of the estate to be liquidated to pay the costs Carole incurred when Antonio abducted their daughter in direct violation of court orders. The circuit court concluded that such misconduct must be viewed separately from marital misconduct. With regard to the remaining estate, the court did not find the distribution inequitable, but stated: "[Antonio's] absence from the uncontested default hearing before Judge Hyde may have disadvantaged him with regard to showing his own positions with regard to distribution, but *** we hardly think that his choices to absent himself from the court proceedings should protect him from the results."

On appeal, Antonio initially contends that the circuit court abused its discretion when it struck his pleadings and found him in default for failing to attend the deposition. Antonio argues the default was improper because Carole's motion for sanctions did not contain a Rule 201(k) statement to resolve differences, and, in the alternative, that Carole failed to act within the spirit of Rule 201(k) by moving for sanctions after Antonio failed to attend the first date set for his deposition. Antonio maintains that, since he was in Italy, the deposition should have been rescheduled for a reasonable date and held at a different location or conducted over the telephone.

▪ Under Rule 201(k) any motion regarding discovery must include a statement that after personal consultation the parties were unable to resolve their differences. (*Brandt v. John S. Tilley Ladders Co.* (1986), 145 Ill. App. 3d 304, 306, 495 N.E.2d 1269.) The more drastic the relief requested, the more necessary compliance with Rule 201(k). *Williams v. A.E. Staley Manufacturing Co.* (1981), 83 Ill. 2d 559, 564, 416 N.E.2d 252.

The purpose behind Rule 201(k) is to urge counsel to adopt a spirit of cooperation with regard to discovery. (*Williams,* 83 Ill. 2d at 564.) Counsel are not to use discovery rules to engage in "harass-

ment, delay, and pettifoggery." (*Spiller v. Continental Tube Co.* (1982), 105 Ill. App. 3d 790, 793, 434 N.E.2d 850, *aff'd* (1983), 95 Ill. 2d 423, 447 N.E.2d 834.) Where a party immediately moves for sanctions, the requirements of Rule 201(k) are not met as it demonstrates that party's failure to make a reasonable attempt to resolve the discovery problem before seeking judicial intervention. (See *Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 431, 447 N.E.2d 834.) The imposition of sanctions for noncompliance with discovery rules and court orders rests largely within the circuit court's discretion and will not be overturned absent an abuse of that discretion. *Miller v. Board of Education, District 189* (1983), 119 Ill. App. 3d 88, 94, 456 N.E.2d 143.

In the case *sub judice*, on February 2, 1984, Carole served Antonio with interrogatories and a notice of deposition, which was scheduled for February 16 in Harvey, Illinois. Antonio failed to appear. On March 27, Carole filed a motion for sanctions against Antonio, requesting the court to set an immediate date for Antonio's deposition and, if he failed to appear, to strike his pleadings and hold him in default.

Carole waited to request Antonio's deposition until two months before the date set for trial. Upon Antonio's very *first* failure to comply, her attorney simply mailed Penn a Rule 201(k) letter and then immediately went to court, pronounced his belief that Antonio would fail to comply with future attempts at discovery, and requested the court to intervene. It is apparent that Carole failed to act within the spirit of cooperation contemplated by Rule 201(k).

In addition, a sanction causing a default judgment is the most severe sanction a court can impose on a defendant and is proper only in those cases where actions of a party showed deliberate, contumacious, or unwarranted disregard of a court's authority. (*Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 323, 505 N.E.2d 694.) The purpose of discovery sanctions is to coerce recalcitrant parties to cooperate in accomplishing the required discovery, not to punish. *Brandt*, 145 Ill. App. 3d at 306-07.

Antonio submits that his failure to attend the deposition did not show a wilful disregard for the court's authority. Carole rebuts that Antonio's deliberate disregard for the court's authority justified the admittedly serious sanction for his failure to comply with discovery. She claims it is important when analyzing the propriety of the sanction to make reference to the events preceding the imposition of sanctions, including Antonio's 1983 kidnapping of Carla. In addition,

Carole states that, from July 1983 until April 5, 1984, Antonio remained ensconced in Italy.

■ We agree with Antonio that his failure to attend the depositions did not demonstrate a deliberate, contumacious, or unwarranted disregard for the court's authority such as to make default an appropriate sanction. After Antonio failed to attend one deposition date, Carole moved the circuit court to set a second deposition date. The court, fully aware that Antonio was in Italy, scheduled the second deposition for two days later, on March 29, warning Antonio he would be held in default if he failed to comply. Unsurprisingly, Antonio failed to attend this court-ordered deposition. He later testified that he never received notice of such deposition, and Penn's fee petition supports this claim. On April 2, the court struck Antonio's pleadings and entered a default. That day, Antonio received a mailgram notifying him of the situation. Antonio arrived in the United States on April 5.

Sanctions must be proportionate to the gravity of the violation. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 430-31, 447 N.E.2d 834.) Here, default, the harshest sanction available to the court, was the first sanction entered. No serious attempt was made to coerce Antonio to comply with discovery. The circuit court found that default was appropriate because it ordered a second deposition date and warned Antonio he would be defaulted if he failed to comply. Although a deliberate disregard of the court's authority is more likely to be found where a party fails to attend a court-ordered deposition date (see *Simmons v. Shimek* (1985), 139 Ill. App. 3d 927, 928-29, 488 N.E.2d 283), here the court ordered the deposition for two days later when it knew Antonio was in Italy. Moreover, as Antonio points out, the record supports his claim that his attorney failed to inform him of the court-ordered deposition. This case, therefore, is unlike the cases that uphold harsh discovery sanctions in the face of multiple violations of discovery requests and orders over an extended period of time. *Cf. Shapira v. Lutheran General Hospital* (1990), 199 Ill. App. 3d 479, 486, 557 N.E.2d 351; *Harris v. Harris* (1990), 196 Ill. App. 3d 815, 824, 555 N.E.2d 10; *Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 322-25, 505 N.E.2d 694; *Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 151, 496 N.E.2d 1045.

Both Carole and the circuit court focus upon Antonio's absence from the country as a reason to impose the sanction of default for his failure to attend the depositions. Antonio was in Italy from July 1983 until April 5, 1984; however, the record shows that the case remained quite active during this time with Antonio being represented in court by counsel and does not support the conclusion that Antonio was fla-

grantly derelict in his responsibilities before the court. Consequently, it was improper for the court to rely on Antonio's absence from the country as a reason to order the default. See *Saeed v. Bank of Ravenswood* (1981), 101 Ill. App. 3d 20, 28-29, 427 N.E.2d 858.

We note that Antonio did exhibit wilful disregard for court orders that were not related to discovery, misconduct we strongly condemn. He kidnapped his daughter in direct violation of the July travel agreement, and he continually failed to pay court-ordered child support. Nevertheless, it is inappropriate to order sanctions for discovery violations based on the wilful disregard of court orders that are unrelated to discovery.

For the foregoing reasons, we conclude that the circuit court abused its discretion in defaulting Antonio. We reverse that decision. In accordance, we must vacate the judgment entered after the default on May 10, 1984, to the extent Antonio was prejudiced from the default. (See *Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 419, 337 N.E.2d 15.) We find that Antonio was prejudiced with regard to the distribution of marital assets, and remand for a new hearing on that matter. Given this disposition, we need not address Antonio's remaining contention.

Reversed and remanded; vacated in part.

McCORMICK, P.J., and DiVITO, J., concur.