**AMERICAN NATIONAL BANK &
TRUST COMPANY, etc., et
al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

No. 86 C 1084.

United States District Court,
N.D. Illinois, E.D.

June 5, 1986.

George P. McAndrews, Robert C. Ryan, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Anne C. Tighe, Cotsirilos & Crowley, Ltd., Chicago, Ill., for plaintiffs.

Judson H. Miner, Acting Corp. Counsel, Ira M. Kleinmuntz, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In an eight-count amended complaint (the "Complaint"), Paxton Landfill Corporation ("Paxton") as owner of the beneficial interest in, and American National Bank & Trust Company ("Bank") as trustee under, an Illinois land trust have sued the City of Chicago ("City") and its Zoning Board of Appeals ("Board") under 42 U.S.C. § 1983 ("Section 1983") and (invoking pendent-jurisdiction doctrine) various provisions of the Illinois Constitution. Counts I through IV charge defendants' refusal to grant plaintiffs a zoning variance on the real estate held in the land trust (the "Property"):

1. denied plaintiffs equal protection in violation of the Fourteenth Amendment (Count I);

2. denied plaintiffs "substantive" due process in violation of the Fifth [1] and Fourteenth Amendments (Count II);

3. involved a "taking" of the Property without just compensation in violation of the Fifth [2] and Fourteenth Amend-

---

1. With no federal actor in the picture here, the Fifth Amendment's Due Process Clause is inapplicable ex proprio vigore to defendants' actions. Plaintiffs can assert only the Fourteenth Amendment's guaranty of due process.

2. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980) restates the nonagenarian principle that the Fourteenth Amendment's Due Process

Clause incorporates the Fifth Amendment's Just Compensation Clause, making it applicable to state actors. Precise jurisprudence thus calls for labeling plaintiff's just compensation claim in Fourteenth Amendment terms (see n. 1). Nonetheless this opinion will follow the conventional (though technically inaccurate) practice of citing to the underlying Bill of Rights provision.

ments (Count III) and Ill. Const. art. I, § 15 (Count IV).

Counts V through VII are directed only against City. Plaintiffs claim the Property's current M3–3 (heavy manufacturing) zoning:

1. denies them substantive due process under the federal Constitution (Count V) and Ill. Const. art. I, § 2 (Count VII); and

2. takes the Property without just compensation in violation of the federal and state constitutional provisions mentioned earlier (Counts VI and VIII).

City and Board have now moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss this action on two independent grounds:

1. It is barred by res judicata principles.

2. No cognizable equal protection, due process or just compensation claims are stated.

For the reasons stated in this memorandum opinion and order, defendants' motion is granted and this action is dismissed on the first of those grounds.

### Facts [3]

Since 1977 Paxton has operated a sanitary landfill on the Property (¶ 2). It was not the first to do so, for waste has been stored on the Property for at least 50 years (¶ 7). Though the Property was zoned M3–3 (heavy manufacturing district) as early as 1923 (¶ 6), since 1962 it has been used exclusively as a landfill under zoning variances issued by City and Board (¶ 8).

Board has also routinely issued variances permitting landfill use of M3–3 zoned land adjacent to or near the Property (¶ 12). In October 1982 Board granted Land and Lakes Company ("Land and Lakes") a variance allowing such use of its M3–3 zoned

land immediately bordering the Property (¶ 13), finding (Ex. A at 2, 4):

5. That the subject [Land and Lakes] site in its present condition is not capable of development for a permitted use in its applied zoning classification of M3–3 Heavy Manufacturing;

\* \* \* \* \* \*

10. That the proposed use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located as the developed portion of said area is identified as a high intensity heavy manufacturing district and the dominant land use in the nearby area is as sanitary landfill operations.

Paxton says the Property has similarly become unsuited for any reasonable use other than as a landfill (¶¶ 9, 10).

In June 1983 Paxton applied for a zoning variance to permit continued operation of the Property as a landfill (¶ 15).[4] Although the chief environmental control inspector of City's Department of Consumer Services submitted a report · approving Paxton's landfill management techniques (Ex. B), Board denied Paxton's application February 24, 1984 (Ex. C). Board Chairman Jack Guthman ("Guthman") said he doubted Paxton had shown "the proper regard for the environment" (¶ 18). Board Member George Cullen ("Cullen") added his concern that a landfill rising 50 feet high might well be "deleterious to the people in that area" (¶ 19). Cullen also agreed with Guthman that "[Paxton's] background is a factor here as well" (id.). Board's resolution denying Paxton's application (the "Resolution") reflected those concerns (Ex. C at 1–2):

WHEREAS, the Zoning Board of Appeals, having fully heard the testimony and arguments of the parties and being fully advised in the premises, finds in

---

3. Rule 12(b)(6) principles require this Court to accept as true the Complaint's well-pleaded factual allegations, drawing all reasonable inferences in plaintiffs' favor. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). All citations to the Complaint will simply take the form "¶ —" or "Ex. —."

4. Board had originally granted a three-year special-use variance on the Property in 1975. That was successively extended to November 30, 1983 (Ex. C at 1). Special-use variances are now valid for no longer than 12 months (Chicago Municipal Code ("Code") ch. 194A, § 11.10–5).

this case ... that the proposed landfill, when completed, will reach a height of 50 feet above grade and therefore will be unsuitable for future manufacturing uses; that the applicant and its related entities has a history with respect to the conduct and operation of landfills which has indicated disregard for environmental concerns; that the applicant and its related entities have shown such disregard for environmental laws and regulations in this and other jurisdictions that there can be no assurance that the public health, safety and welfare will be protected at this site; it is therefore

RESOLVED, that the application for a special use be and it hereby is denied.

While Paxton's application was pending before Board, City's Department of Planning claimed public rights of way on the Property. Bank brought a declaratory quiet-title action against City in the Circuit Court of Cook County (the "Circuit Court Action").[5] On March 22, 1984 Bank added an administrative review count to the Circuit Court Action under the Illinois Administrative Review Act ("ARA," Ill.Rev.Stat. ch. 110, ¶¶ 3–101 to 3–112),[6] claiming the Resolution (1) was against the manifest weight of the evidence and (2) was based solely on hearsay allegations as to Paxton's poor environmental record (¶ 21).[7] After City filed a motion to dismiss for failure to join necessary parties, Bank amended its complaint, adding Board and several others as defendants (Opinion, 132 Ill.App.3d at 571, 87 Ill.Dec. at 863, 478 N.E.2d at 2).

Bank's Circuit Court Action was a success. Its title to the Property was confirmed, and the Resolution was reversed (Ex. D at 12).[8] Judge Murray held Board's findings as to Paxton's poor environmental record were "not supported by any competent evidence" (*id.* at 10), and he remanded the matter to Board with a direction to issue the variance if Paxton "otherwise compl[ied] with the rules and regulations" (*id.* at 12).

City appealed only as to the administrative review count,[9] and the Appellate Court reversed. Without reaching the substance of Judge Murray's sufficiency-of-evidence ruling, the Opinion (132 Ill.App.3d at 573, 87 Ill.Dec. at 865, 478 N.E.2d at 3) held Bank's failure to comply with the issuance-of-process requirements of ARA ¶ 3–103 [10] required dismissal.

Both in posing and in resolving that issue, the Appellate Court characterized the dismissal in wholly nonjurisdictional terms (132 Ill.App.3d at 572, 87 Ill.Dec. at 863–64, 478 N.E.2d at 2–3) (citations omitted):

The 35-day period for issuance of summons is mandatory and not jurisdictional and failure to secure issuance of summons within the period will not preclude judicial review.... However, the 35-day period is intended to insure that the

---

**5.** *American National Bank & Trust Co. v. City of Chicago*, 132 Ill.App.3d 570, 570–71, 87 Ill.Dec. 862, 863, 478 N.E.2d 1, 2 (1st Dist.1985) (the "Opinion"), defendants' successful appeal from Bank's victory in the Circuit Court Action, recounts its history.

**6.** Further citations to ARA will take the form "ARA ¶ —," referring to the Chapter 110 paragraphing rather than ARA's internal numbering.

**7.** Bank also added a mandamus count, seeking to compel City's Department of Consumer Services to issue a landfill operation permit (Opinion, 132 Ill.App.3d at 571, 87 Ill.Dec. at 863, 478 N.E.2d at 2).

**8.** Judge Murray denied the mandamus claim (see n. 7), saying such action was premature (Ex. D at 8).

**9.** On April 11, 1986 (just after receiving defendants' opening memorandum) this Court directed the parties to clarify the posture of the rest of the Circuit Court Action. Plaintiffs' Mem. 7 n. 4 now says City did not appeal the Circuit Court's quiet-title ruling. Thus the Circuit Court Action has ripened into a final judgment in all respects.

**10.** ARA ¶ 3–103 provides:

Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby.

Bank failed to procure timely issuance of summons to four community residents who had been parties to the Board proceeding (Opinion, 132 Ill.App.3d at 571, 87 Ill.Dec. 862, 478 N.E.2d at 3).

plaintiff cannot unduly delay review ... and the plaintiff must show a good faith effort to have the clerk issue the summons within the 35 days to warrant relaxation of the filing period....

\* \* \* \* \* \*

We conclude that the Bank was not diligent in obtaining issuance of the summonses and that the Circuit Court erred in denying the City's motion to dismiss.

But having framed and decided the issue in that way, the Opinion immediately went on to say (*id.*):

In light of our conclusion that the Circuit Court lacked jurisdiction to review the resolution of the Zoning Board, we need not consider the City's other contentions.

Bank sought and was denied leave to appeal that decision to the Illinois Supreme Court (¶ 28).

### *Res Judicata Analysis*

City and Board principally contend this entire action is barred by res judicata principles. As this Court recently explained in *Magnus Electronics, Inc. v. Argentine Republic*, 637 F.Supp. 487, 489–90, No. 85 C 10557 (N.D.Ill.1986):

Res judicata principles encompass both "claim preclusion," which prohibits litigants from splitting a single cause of action into more than one proceeding, and "issue preclusion," which forbids litigants from relitigating issues actually resolved in an earlier proceeding. *Migra v. Warren City School District, Board of Education*, 465 U.S. 75, 77 n. 1 [104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56] (1984) thoroughly explains that terminology. Claim preclusion applies to bar theories that were or that could have been raised in the prior case, *Nevada v. United States*, 463 U.S. 110, 129–30 [103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509] (1983):

Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was

offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. [(4 Otto)] 351, 352 [24 L.Ed. 195] (1877). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen*, 333 U.S. 591, 597 [68 S.Ct. 715, 719, 92 L.Ed. 898] (1948).

None of the constitutional issues plaintiffs press on this Court was actually resolved or even litigated before Board or in the Circuit Court Action and its appeal. City and Board must therefore seek claim-preclusion protection, as *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1, describes it:

Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

Trying to determine what "should have been advanced" but wasn't is an often metaphysical enterprise. That is especially so here, where the earlier suit was in state court. This Court must consider not only the judicial-economy and fairness-to-litigants rationales supporting res judicata, but also the comity concept expressed in the full-faith-and-credit statute, 28 U.S.C. § 1738 ("Section 1738"). *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). On that score *Migra*, 465 U.S. at 85, 104 S.Ct. at 898 (adapted to the facts here) states the controlling principle:

Section 1983, however, does not override state preclusion law and guarantee [plaintiffs] a right to proceed to judgment in state court on [their] state claims and then turn to federal court for adjudication of [their] federal claims. We hold, therefore, that [plaintiffs'] state-court judgment in this litigation has the same preclusive effect in federal court that the judgment would have in the [Illinois] state courts.

Hence the initial inquiry here is whether Illinois courts would apply claim preclusion to plaintiffs' current lawsuit.

Illinois' claim-preclusion rule exhibits no unique characteristics (*Housing Authority for LaSalle County v. Young Men's Christian Association of Ottawa*, 101 Ill.2d 246, 251–52, 78 Ill.Dec. 125, 127–28, 461 N.E.2d 959, 961–62 (1984)):

> The doctrine of *res judicata* provides that "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action." (Emphasis added.) (*People v. Kidd* (1947), 398 Ill. 405, 408, 75 N.E.2d 851 [, 853].) When *res judicata* is established "as a bar against the prosecution of a second action between the same parties upon the same claim or demand * * * it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. [Citations.]" *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478, 29 N.E.2d 1014 [, 1017].

Under that doctrine, claim preclusion requires three elements:

1. a final judgment on the merits;
2. identity of parties or their privies; and
3. identity of "claim, demand or cause of action."

Neither side disputes the presence of the second factor: City and Bank were original parties to the Circuit Court Action, with Board added later, and Paxton (beneficiary of the land trust of which Bank is trustee) is unquestionably Bank's privy. But the parties battle over the other two elements, and the nature of their fight has tended to merge the two into one. Bank and Paxton say they could not have presented their constitutional claims to Board, and the later dismissal of the Circuit Court Action "for lack of jurisdiction" negates any final decision on the merits by a judicial forum

(which could have heard those claims). In *Housing Authority* language, they contend there was no identity of "claim, demand or cause of action" between the Board proceeding and the claimed nullity of the Circuit Court Action.

That line of argument is correct up to a point, but it fails as a whole. Pulling its merged elements apart helps to show why.

First, although neither side has really addressed the scope of Board's jurisdiction, there is little doubt *Board* could not have heard plaintiffs' constitutional claims. Code ch. 194A, § 11.10–4 sets out the standards Board is to apply in considering special-use variances:

> No special use shall be granted by the Zoning Board of Appeals unless the special use:
>
> (1) a. Is necessary for the public convenience at that location;
>
> b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and
>
> (2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and
>
> (3) It is within the provisions of "Special Uses" as set forth in rectangular boxes appearing in Articles 7, 8, 9, and 10; and
>
> (4) Such special use shall conform to the applicable regulations of the district in which it is to be located.

Those criteria are framed as factual inquiries, without provision for considering constitutional claims. Nothing there suggests Paxton could have urged Board to grant a special-use permit because the opposite result would implicate a denial of due process or equal protection or a taking without just compensation. Nor does this Court's canvass of Code's other zoning provisions (ch. 194A) reveal Board has the power to establish zoning classifications, so Paxton could not have argued the substance of Counts V through VIII before Board either. In the terms articulated by

*Housing Authority,* 101 Ill.2d at 252, 78 Ill.Dec. at 128, 461 N.E.2d at 962, plaintiffs' constitutional claims are not the sort that "might have been offered" on Paxton's behalf at the *Board* stage. See also *Spiller v. Continental Tube Co.,* 95 Ill.2d 423, 432, 69 Ill.Dec. 399, 403, 447 N.E.2d 834, 838 (1983) (claim preclusion extends to claims that "could have been raised"). Consequently it appears Board's Resolution would not have barred an Illinois court, in a later lawsuit, from determining the Paxton-Bank constitutional claims.

But Board's Resolution was not the end of things. Bank sought administrative review, and "that has made all the difference." [11] For while Paxton's presentation to *Board* was necessarily limited to the factual issues of public necessity, convenience and welfare, Illinois law unquestionably gives parties the right to attack the constitutionality of administrative action and of ordinances in the judicial administrative-review process (*Howard v. Lawton,* 22 Ill.2d 331, 333, 175 N.E.2d 556, 557 (1961) (zoning ordinance); *Rockford Drop Forge Co. v. Pollution Control Board,* 71 Ill. App.3d 295, 297, 27 Ill.Dec. 400, 402–03, 389 N.E.2d 212, 214–15 (2d Dist.1979) (pollution control regulations); *Head-On Collision Line, Inc. v. Kirk,* 36 Ill.App.3d 263, 268, 343 N.E.2d 534, 538 (1st Dist.1976) (tax assessment)). Further, a plaintiff in an administrative review lawsuit may always seek reversal on the ground the administrative action was arbitrary (*Secretary of State v. Kunz,* 116 Ill.App.3d 736, 739, 72 Ill.Dec. 262, 265, 452 N.E.2d 387, 390 (4th Dist.1983), and that is the gravamen of the Count II substantive-due-process claim in this case.

Moreover, even had all those constitutional onslaughts been unavailable in the ARA claim itself, such attacks could readily have been coupled with the ARA cause of action as added counts in the Circuit Court Action. Under Ill. Const. art. VI, § 9 the circuit courts "have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction...." And the Code of Civil Procedure (Ill.Rev.Stat. ch. 110, ¶¶ 2–613 and 2–614) places no limit on joinder of counts and causes of action. Just as mandamus and declaratory counts were joined with the administrative-review count in the Circuit Court Action, so might Bank have added counts reflecting the state and federal constitutional claims. See *Skilling v. Skilling,* 104 Ill.App.3d 213, 219, 59 Ill. Dec. 937, 942, 432 N.E.2d 881, 886 (1st Dist.1982) (circuit courts have "the general power to determine all matters of controversy arising ... by reason of statute or the Constitution....").

■ Clearly, then, the claims plaintiffs now advance could have been raised in the Circuit Court Action, and that of course was the natural time to do so (*Howard,* 22 Ill.2d at 333, 175 N.E.2d at 557):

> To hold otherwise would result in piecemeal litigation by first requiring review of an administrative body's decision and then entertaining another action to test constitutionality brought on by such decision.

Claim splitting is the vice against which claim-preclusion doctrine is aimed (*Restatement (Second) of Judgments* ("Restatement") § 24 (1980)). All the legal theories plaintiffs raise in this action could have been asserted in the Circuit Court Action to attack the Resolution's legitimacy, but Bank chose to mobilize only part of its arsenal (the manifest-weight-of-the-evidence and use-of-hearsay arguments) at that time.

Neither side has really discussed whether that would amount to "claim splitting" under Illinois law. *Housing Authority,* 101 Ill.2d at 251, 78 Ill.Dec. at 128, 461 N.E.2d at 962 says res judicata bars a second action involving the same "claim, demand or cause of action," but the opinion is silent as to whether the three operative terms are coextensive, disjunctive or overlapping. Anyone reading a number of Illinois res judicata cases must come away with the impression those words (though

---

11. R. Frost, *The Road Not Taken.*

they may have the sound of terms of art) have no fixed definition. That is unsurprising, given the near-infinite degrees of potential intersection between any first and second lawsuits examined in claim-preclusion terms. In any event, Illinois law has developed in a nonuniform manner (*Pfeiffer v. William Wrigley Jr. Co.*, 139 Ill. App.3d 320, 323, 92 Ill.Dec. 332, 334–35, 484 N.E.2d 1187, 1189–90 (1st Dist.1985) (citations omitted)):

> When determining the identity of causes of action for *res judicata* purposes, one line of Illinois cases considers whether the evidence needed to sustain the second suit would have sustained the first, or whether there is identity of facts essential to the maintenance of both cases.... Another line of Illinois cases has adopted a "transactional" approach in determining whether two suits involve the same cause of action, stating that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief."

In the face of that dichotomy, our Court of Appeals has synthesized the Illinois approach this way (*Hagee v. City of Evanston*, 729 F.2d 510, 514 (7th Cir.1984) (footnotes and citations omitted)):

> The principle that res judicata extends to all matters within the purview of the original action, whether or not they were actually raised, is tantamount to a rule requirinq parties to consolidate all closely related matters into one suit. As such, the principle serves well the interest of judicial economy, and thus it is at the core of the res judicata doctrine. Two corollaries are also of fundamental importance to Illinois' res judicata doctrine. First is the rule that a party may not maintain two suits based on the same set of facts by the simple expediency of limiting the theories of recovery advanced in the first.... The second rule is that a party may not maintain two suits based on the same set of facts simply by altering the claim for relief from one suit to the next.

In this action plaintiffs have expressly disavowed any claim based on state procedural inadequacies (see their Mem. 21). What they wanted from the start was a zoning classification that would allow them to operate a landfill on the Property. Their Circuit Court Action said Board should have given them the right to do so. Board's failure to grant the special-use variance was the product of (1) the Code's terms and (2) Board's view of the evidence presented to it. Any claim that Board's decision was against the manifest weight of the evidence challenged precisely "the same conduct" as a claim Board's decision and City's code classification system were unconstitutional (see *Kenny v. Interim General Superintendent of Schools*, 112 Ill.App.3d 342, 348–49, 67 Ill.Dec. 876, 881, 445 N.E.2d 356, 361 (1st Dist.1983)) and arose from the same "transaction" or "group of operative facts." Clearly the claims are "closely related" in *Hagee* terms.

Nor is the fact Bank and Paxton now ask for damages—a remedy not sought in the Circuit Court Action—significant. Restatement § 25, comment f states the general rule:

> *Successive actions for different remedies.* As the result of a single transaction or a connected series of transactions giving rise to a unitary claim, the plaintiff may be entitled to a number of alternative or cumulative remedies or forms of relief against the defendant. In a modern system of procedure it is ordinarily open to the plaintiff to pursue in one action all the possible remedies whether or not consistent, whether alternative or cumulative, and whether of the types historically called legal or equitable.
>
> Therefore it is fair to hold that after judgment for or against the plaintiff, the claim is ordinarily exhausted so that the plaintiff is precluded from seeking any other remedies deriving from the same grouping of facts.

Of course Bank could not effectively have sought damages in conjunction with a constitutional attack in the Circuit Court Action: By definition a decision upholding the Resolution's constitutionality would have negated any entitlement to damages, while if the Resolution had been invalidated Bank would have received the desired zoning relief—and thus (again by definition) could have sustained no damages. But that only underscores the irrelevancy of a damage claim—one really self-created in this case. It should be remembered Section 1983 creates no legal rights: It merely provides a procedural vehicle for the enforcement of federal constitutional and statutory claims (*Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979)). Nothing about Section 1983 alters the nature of the underlying constitutional claims Bank could and should have asserted in the Circuit Court Action. Thus the "claim, demand or cause of action" here is the same as that in the earlier case.

That leaves only one factor in the *Housing Authority* trio to be examined: a final judgment on the merits in the prior action. Because the Board proceeding could not create a bar to claims not cognizable before it, again the point of reference must be the Circuit Court Action. And plaintiffs contend the dismissal there, said at one point to be for "lack[ of] jurisdiction" (Opinion, 132 Ill.App.3d at 573, 87 Ill.Dec. at 864, 478 N.E.2d at 3), means there was no final judgment *on the merits*. But it is well settled a court cannot determine the res judicata effect of its own judgments. *People v. Kidd*, 398 Ill. 405, 410, 75 N.E.2d 851, 854 (1947) (citations omitted) teaches:

> The doctrine of res judicata is not dependent upon the correctness of the judgment, or of the verdict or finding on which it is based.... Nor is the value of a plea of former adjudication to be determined by the reasons which the court rendering the former judgment may have had for doing so.... The effect of the former judgment as a bar is the same

whether resting on an erroneous view of the law or not.

Thus it is not what the Opinion said it did that counts. Instead, this Court must determine what the Appellate Court did in fact.

Dismissals for lack of jurisdiction do not generally raise a claim-preclusive bar (*People ex rel. Scott v. Chicago Park District*, 66 Ill.2d 65, 69, 4 Ill.Dec. 660, 662, 360 N.E.2d 773, 775 (1977); Restatement § 20(1)(a)). City and Board say that rule does not apply here, because even though the Opinion *said* the dismissal was for lack of jurisdiction, its earlier characterization of ARA ¶ 3–103 as "mandatory and not jurisdictional" (132 Ill.App.3d at 572, 87 Ill.Dec. at 863, 478 N.E.2d at 2) states the correct legal rule: ARA ¶ 3–103's 35-day summons period is really a statute of limitations.

That is indeed the correct characterization. Any truly "jurisdictional" time limit can never be extended, while statutes of limitations are subject to waiver, estoppel and equitable tolling. See, e.g., *Zipes v. TWA, Inc.*, 455 U.S. 385, 392–93, 102 S.Ct. 1127, 1131–32, 71 L.Ed.2d 234 (1982) (making precisely that distinction for Title VII cases).

By similarly characterizing ARA ¶ 3–103 as "mandatory and not jurisdictional," the Illinois Supreme Court has not once but twice specifically excused a failure to comply with its timetable where a diligent attempt at compliance was shown (*Cox v. Board of Fire and Police Commissioners of the City of Danville*, 96 Ill.2d 399, 404, 71 Ill.Dec. 688, 690, 451 N.E.2d 842, 844 (1983); *City National Bank & Trust Co. v. Property Tax Appeal Board*, 97 Ill.2d 378, 381–82, 73 Ill.Dec. 555, 557–58, 454 N.E.2d 652, 654–55 (1983)). *Cox* and *City National* plainly show the Illinois Supreme Court treats ARA ¶ 3–103 as a statute of limitations rather than a jurisdictional limitation. After the Opinion's consistently accurate description of ARA ¶ 3–103 in those terms, its final passing reference to "jurisdiction" was simply careless usage. In fact that locution followed immediately after the

Opinion's references to "a good faith effort" and being "diligent" in obtaining issuance of the summonses—concepts that would have no place at all in a jurisdictional rule.

■ Splitting that hair does not of itself tell us what difference lies in the distinction. Though the practical difference to those who miss the deadline is obvious, neither characterization gets litigants any closer to the "merits" in substantive terms. Once Bank failed to show an entitlement to equitable tolling, dismissal followed without the Opinion's having to touch the substantive administrative-law issues.

Some courts have looked to that factor and said limitations dismissals are not "on the merits" for res judicata purposes (see, e.g., *Santucci Construction Co. v. Metropolitan Sanitary District of Greater Chicago*, 55 Ill.App.3d 376, 379, 13 Ill.Dec. 358, 360, 371 N.E.2d 53, 55 (1st Dist.1977) (characterizing limitations dismissals as "procedural" only)). But as this Court's colleague Judge Susan Getzendanner has accurately pointed out in *Chang v. Northwestern Memorial Hospital*, 549 F.Supp. 90, 94–95 (N.D.Ill.1982), that approach ignores the unambiguous directive of Ill.Rev. Stat. ch. 110A, ¶ 273 ("Rule 273" [12]):

> Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.

Limitations dismissals are notably absent from Rule 273's list of exceptions. *Chang*, 549 F.Supp. at 95 therefore held such dismissals are "on the merits" for res judicata purposes. Accord, *Muscare v. Voltz*, 107 Ill.App.3d 841, 843, 63 Ill.Dec. 689, 691, 438 N.E.2d 620, 622 (1st Dist.1982) (dismissal under statutory limitations period for suits against Chicago Transit Authority is "on

the merits" under Rule 273 and creates a res judicata bar).

*Muscare* drew a further distinction: Even conceding most limitations dismissals would be only "procedural" in the absence of Rule 273, the court added (107 Ill.App.3d at 843, 63 Ill.Dec. at 691, 438 N.E.2d at 622) (citations omitted):

> A special limitation, on the other hand, may be contained within a statute that creates rights unknown to common law.... The limitation thus fixes a time within which the action may be commenced and is more than a remedial restriction. In such an instance, the time limitations in statutory causes of action are considered a condition of the liability itself and not one of remedy only.

That analysis suggests it really doesn't matter whether a statutory time limit is called jurisdictional or a statute of limitations, so long as it acts to define the scope of a statutory right. In either instance dismissal would be "on the merits" because the right to relief is extinguished. See 1B *Moore's Federal Practice* ¶ 0.409[6], at 334–35 (2d ed. 1984). Often it is possible to say a statute of limitations bars a remedy only and not a right (see *id.* at 335–36). In much the same way, jurisdictional dismissals are frequently without prejudice to refiling in a court of competent jurisdiction.[13]

But that is not so, as *Muscare* teaches, when the exercise of a right is conditioned on compliance with a time schedule. Cf. *Phillips v. Elrod*, 135 Ill.App.3d 70, 74, 88 Ill.Dec. 470, 472, 478 N.E.2d 1078, 1082 (1st Dist.1985) (compliance with wrongful death statute of limitations "is a condition of the right to sue itself"). Thus the right to challenge an Illinois administrative determination is conditioned on compliance with ARA ¶ 3–103. Repleading or filing in another forum cannot cure that problem. And even if some statute-of-limitations dismissals might perhaps under Illinois law

---

12. Chapter 110A contains the Illinois Supreme Court Rules.

13. That is the familiar effect of federal court dismissals for lack of subject matter jurisdiction (e.g., where diversity of citizenship or the $10,-000 amount in controversy is wanting).

escape the impact of Rule 273 (a doubtful· proposition for the reason already discussed), this is not one of them, for the right to complain (not just the right to a particular remedy) is extinguished.

Under Rule 273 it is really irrelevant that limitations dismissals are not accompanied by an airing of the "merits" in the usual sense of that term. After all, Rule 273's carefully-worded terminology (*"operates as an adjudication on the merits"*) tells just which dismissals shall be given the same effect as a valid adjudication of the merits, even though the merits have *not* been addressed in fact. See, e.g., *Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 122, 22 Ill.Dec. 519, 523, 382 N.E.2d 1217, 1221 (1978) (under Rule 273 a dismissal for failure to cooperate in discovery is "on the merits"). Put another way, Rule 273 defines the policy Illinois courts must follow in claim-preclusion analyses. No Illinois court could undertake re-examination of the Property's zoning on any ground.

That means this federal court cannot do so either. *Migra*, 465 U.S. at 85, 104 S.Ct. at 898, teaches Section 1738 requires federal courts to give state-court judgments the same preclusive effect (no more and no less) they would have in the courts of the rendering state.

Bank and Paxton say even if that analysis is correct as to Illinois law, applying it here would conflict with federal policy as expressed in Section 1983. They ·are wrong. While at one time it was possible to argue federal courts were required to apply res judicata principles to state judgments only where there had been a "full and fair hearing in a state court" (*Allen*, 449 U.S. at 101, 101 S.Ct. at 418), that

proposition was soundly rejected in *Migra*, 465 U.S. at 83–85, 104 S.Ct. at 897–98. There the Court held Section 1983 did not modify the Section 1738 directive to accord state judgments whatever res judicata effect they would have in state court, whether preclusion was based on issues actually litigated or on those that could have been but were not. Where Section 1738 is in the picture, Section 1983 does not guarantee a federal forum.

Bank and Paxton press the further argument that ARA ¶ 3–103 effectively establishes a 35-day statute of limitations for Section 1983 cases. For Illinois-based Section 1983 actions, the limitations period is five years (*Shorters v. City of Chicago*, 617 F.Supp. 661, 666 (N.D.Ill.1985)[14]). *Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 2930–33, 82 L.Ed.2d 36 (1984) held the federal policies expressed by Section 1983 did not permit borrowing a state's six-month administrative statute of limitations pursuant to 42 U.S.C. § 1988 ("Section 1988").[15] Although much of *Burnett* may have been superseded by *Wilson*, it would still be inappropriate to borrow a 35-day statute of limitations for filing Section 1983 actions. However, two reasons— each independent of the other and each fully dispositive—demonstrate the emptiness of plaintiffs' argument in this area.

First, the truly short answer is—as *Migra* establishes—nothing in Section 1983 overrides the congressional policy expressed in Section 1738. Congress' mandate to accord full faith and credit to state-court decisions places a limit on the availability of a federal forum under Section 1983 (*Migra*, 465 U.S. at 84, 104 S.Ct. at

---

**14.** Plaintiffs Mem. 18 points to *Anton v. Lehpamer*, 787 F.2d 1141, 1142 (7th Cir.1986), which speaks of Illinois' two-year personal injury statute as applicable to Section 1983 actions. Because plaintiffs' argument discussed in the text lacks merit in any event, the two-versus-five-year issue drops out. Nevertheless for clarity's sake it must be pointed out that question was neither argued nor considered in *Anton*, which simply assumed without analysis that Illinois' two-year personal injury statute was the appropriate choice under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d

254 (1985). Until such time as our Court of Appeals actually examines and decides the issue posed in *Shorters,* this Court sees no reason to reexamine its holding in that case.

**15.** Section 1983 does not contain its own statute of limitations. Section 1988 directs federal courts to look to state law "so far as the same is not inconsistent with the Constitution and laws of the United States" to find one. See *Wilson,* 105 S.Ct. at 1942–49.

898). To the extent plaintiffs' argument says Section 1983 is somehow "stronger" than Section 1738,[16] that is simply wrong.

Second, the entire issue is really a red herring. From the start plaintiffs have been in control of their own litigation. They decided when to bring the original declaratory judgment action and when to seek zoning relief from Board. Once Board turned them down, nothing stopped them from asserting their constitutional claims in the Circuit Court as they should have done. Especially given the fact they do not challenge the procedural adequacy of Illinois' zoning machinery, they cannot fairly portray their constitutional claims as distinct from their general claim of entitlement to a special-use variance: Properly presented to the Circuit Court, those claims would simply have been additional grounds for overruling Board's Resolution.

Plaintiffs neglected to make their constitutional arguments in the first available judicial forum (the Circuit Court). Now they try to turn their own delinquency into an asset by urging a more extended time clock for a claimed Section 1983 cause of action in this Court—a cause of action created by that very delinquency. That represents an impermissible kind of bootstrapping.[17]

Thus plaintiffs' final contention, like all their others, lacks merit. Plaintiffs cannot escape the fact they seek to advance in this Court matters they could—and should—have asserted in their state court lawsuit.

That calls into play both the letter and the spirit of res judicata principles.

### Conclusion

All plaintiffs' claims are barred by res judicata doctrine. That conclusion makes it unnecessary to reach defendants' arguments going to the merits of those claims. This action is dismissed.

---

**16.** Section 1738, after all, implements the federal counterpart of a constitutional mandate: the Full Faith and Credit Clause. Section 1983 embodies post-Civil War principles that were later built into the Constitution via amendment. To "rank" those congressional enactments in terms of their relative importance, or in terms of their order of enactment (see *Migra*, 465 U.S. at 83–85, 104 S.Ct. at 897–98), is a bootless effort.

**17.** This does not amount to an impermissible state-remedies exhaustion requirement (see generally *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). Plaintiffs could have ignored Illinois' administrative review process entirely and brought their claim for damages directly to federal court under Section 1983. But plaintiffs have not displayed (let alone invoked) the distrust of state procedures lying behind Section 1983's no-exhaustion rule (*Patsy*, 457 U.S. at 505, 102 S.Ct. at 2562)—a distrust *Migra*, 465 U.S. at 84, 104 S.Ct. at 898, rejected in the res judicata context. Instead they specifically opted to use the Illinois courts—but then chose to assert only part of their claim there. To say a litigant need not exhaust state remedies before suing under Section 1983 in federal court is to say litigants have an either/or choice of forums. But litigants may not knock on the door of a federal court to assert the neglected portion of their cause of action, when their very neglect to plead their *whole* cause of action in the state court has allowed that court's door to lock shut.