**AMERICAN NATIONAL BANK & TRUST COMPANY, as Trustee under Trust No. 33832, and Paxton Landfill Corporation, Plaintiffs-Appellants,**

**v.**

**CITY OF CHICAGO and Zoning Board of Appeals for the City of Chicago, Defendants-Appellees.**

No. 86–2131.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1987.

Decided July 13, 1987.

George P. McAndrews and Robert C. Ryan, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for plaintiffs-appellants.

Judson H. Miner, Corp. Counsel, Mary K. Rochford and Julie Elena Brown, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, WOOD and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

American National Bank, the trustee of a parcel of land in Chicago, applied for a zoning variance on behalf of Paxton Landfill Corp., the beneficial owner. The land has been zoned for "heavy manufacturing" since 1923 but has been a garbage dump for more than 50 years under a series of variances. Chicago's Zoning Board of Appeals has been using the zoning-and-variance device to establish a system of licensing for landfills. Variances for this and neighboring parcels have been granted routinely.

The Bank encountered difficulty when it applied for a renewal in 1983. The City's Department of Planning opposed the application on the ground that the City owned rights of way through the parcel. The Bank pursued the application before the Board and also filed a suit in state court seeking to quiet title in the parcel. While the suit was pending, the City's Environmental Control Inspection Department reported to the Board that the "site is well run and conforms to the [City's] ordinance and the best technology of landfill practices."

The Board held a hearing on February 24, 1984, and denied the Bank's application for a variance. The Chairman of the Board stated that he voted to deny the application because he did not like the reputation of Paxton's corporate parent. Another member of the Board stated that although the Board lacked authority to control the height of landfills, the dump in question could reach 50 feet above grade and should be curtailed. The Board's formal order, mailed on March 8, relied on both grounds.

On March 22 the Bank amended its pending suit to add a challenge to the denial. The amendment maintained that the Board's decision was against the weight of the evidence and rested on unproven at-

tacks on Paxton's parent. The City filed a motion to dismiss on April 10, pointing out that the Bank had not served all of the parties to the Board's proceedings. To obtain judicial review of an administrative decision in Illinois, the plaintiff must serve summonses on all defendants within 35 days. Ill.Rev.Stat. ch. 110 ¶ 3–103. Paragraph 3–107 requires the plaintiff to name all parties to the administrative proceeding as defendants. On April 11, the 34th day, the Bank furnished the clerk of the court with summonses for the Board and the City's Department of Consumer Services. (Under Illinois practice in administrative litigation, the clerk of court serves the summonses.) Not until April 17, the 40th day, did the Bank give the clerk the summonses for the four private parties who had appeared before the Board to oppose the application.

The Circuit Court of Cook County granted summary judgment for the Bank, holding the Board's decision unsupported by probative evidence in light of the report of the City's environmental officials. The Appellate Court of Illinois reversed, *American National Bank & Trust Co. v. Chicago*, 132 Ill.App.3d 570, 87 Ill.Dec. 862, 478 N.E.2d 1 (1st Dist.1985), on the sole ground that the Bank had not given the clerk all necessary summonses within the time required.

Foiled in state court, Paxton and the Bank (collectively Paxton) filed this suit under 42 U.S.C. § 1983, contending that the zoning classification and the failure to grant a variance violated both the Due Process Clause of the fourteenth amendment and the Takings Clause of the fifth amendment to the extent it has been applied to the states. See *Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226, 233–41, 17 S.Ct. 581, 583–86, 41 L.Ed. 979 (1897). They were promptly foiled again. The district court held, 636 F.Supp. 374 (N.D.Ill.1986), that the suit is barred by principles of claim preclusion (res judicata) applicable in Illinois, whose law controls the effect of the judgment in the state suit. See 28 U.S.C. § 1738; *Migra v. Warren City School District*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The court concluded that the evidentiary and constitutional arguments are a single claim, so that the adverse disposition of one precludes subsequent litigation of the other. Although a dismissal for want of jurisdiction does not preclude later assertion of the same claim, the district court held that a dismissal for failure to tender the summonses is not "jurisdictional" under Illinois law.

■ Because the case was dismissed on the pleadings, we shall assume that Paxton and the Bank could establish that the Board acted without warrant. The effect of this is far from clear. It can't matter whether the City's system of licensing garbage dumps operates explicitly or through zoning variances. Either may be a taking yielding a right of compensation, *First English Evangelical Lutheran Church v. Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), but one aggrieved by such a decision must resort to state remedies. *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–97, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985). If state remedies will prevent the injury, the state has not taken property or violated the fourteenth amendment. *Williamson* requires an owner to pursue state remedies, and presumably this means to pursue them using the procedures specified by the state. You can spurn your state remedies by filing late as well as by not filing at all. We know that in this case the remedies available in the courts of Illinois could have averted any injury to Paxton, and it is odd to contemplate a suit in which Paxton seeks to compel the City to compensate Paxton for loss that would not have occurred had it complied with ¶¶ 3–103 and 3–107. Cf. *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 799 F.2d 317, 324–28 (7th Cir.1986). Nonetheless, the district judge did not reach the merits, so we shall assume that there is something to this litigation and limit our decision to the preclusive effect of the judgment in the state case.

■ Paxton urges us to disregard the state judgment, despite § 1738, on the

ground that the 35–day rule is too short. See *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), and other cases holding that periods ranging from 90 days to a year are too short to be absorbed as federal statutes of limitations for § 1983 cases. These cases say that victims of constitutional torts must have enough time to find lawyers and assemble their claims. Paxton believes that 35 days was not long enough to advance its constitutional claims. The district court held *Burnett* irrelevant because it dealt only with periods of limitations under 42 U.S.C. § 1988 and therefore did not address the effect of § 1738. 636 F.Supp. at 383–84. We agree with the district court's assessment. That Paxton would have had two years to start an independent federal suit does not affect the preclusive effect of Paxton's first suit. Paxton might as well argue that if it had fully litigated its constitutional claims in state court, it could start over in federal court so long as there were still time remaining on the two-year statute of limitations now applicable to § 1983 litigation in Illinois.

[3] More, the observation that we cannot ordinarily expect victims of constitutional torts to sue within 35 days does not tell us much about the appropriate treatment of one who did file suit within that time. Paxton argues that 35 days is unconstitutional under the Due Process Clause. Yet due process requires only that a person have a meaningful opportunity to present his claims; it does not guarantee success. Compare *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), with *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Paxton was not ignorant of its rights or in need of more time to investigate. It had counsel throughout and commenced litigation even before the Board decided. A firm with counsel can move fast. Complex cases about tender offers are begun, slugged out, and decided on appeal in less than 35 days. Paxton's problem was that counsel did not appreciate the effect of ¶¶ 3–103 and 3–107 even after receiving the City's motion with two days

left. The Due Process Clause does not ensure against oversights in litigation.

The 35 days under § 3–103 is more like the time within which to take an appeal than to file a suit. Before the 35 days commenced, Paxton was litigating in both court (the quiet title suit) and agency. The administrative tribunal rendered its decision, and Paxton had more than a month to move that portion of the dispute to court. During the administrative proceeding Paxton had plenty of time to plan its strategy, locate arguments, think of contingencies, even draw up complaints and summonses. (Complaints are filed to challenge some federal administrative decisions within seconds of their announcement.) The Board announced its decision orally two weeks before it entered a formal order; those two weeks offered additional time for selecting issues. If the Board's hearing had occurred before an administrative law judge, with an appeal to the Board, Paxton could not argue that 35 days are too few to file the necessary papers in the Board, including a specification of issues to be pursued. Litigants often file and serve within 35 days their petitions for certiorari or jurisdictional statements in the Supreme Court, documents much more complex than the skeletal complaint and summons Paxton had to file. So Paxton's contention that 35 days is unconstitutionally brief, relieving it of the preclusive effect of the state judgment, is unavailing.

■ We therefore inquire whether the courts of Illinois would allow Paxton to initiate a suit challenging the Board's decision on constitutional grounds, after failing to secure statutory review of the administrative decision. The initial inquiry is whether the claims—insufficient evidence and constitutional deprivation—are the "same". To that the answer is yes. Constitutional and administrative contentions are different ways of obtaining the same relief: nullification of the decision. (Paxton now wants money too, but the only reason for the monetary claim is Paxton's failure in state court. Success in the state suit would have enabled Paxton to use the dump uninterrupted. Defeat in litigation is

not itself a justification for a new case on the theory that the loss created a new claim for relief.) Paxton could have raised both statutory and constitutional arguments before the Board and the circuit court. Both arguments arise out of the same event, the Board's denial of a variance. *Williamson* shows the fundamental identity of the constitutional claim and other methods of challenging a zoning decision under state law.

■ The analysis in the last paragraph would be straight-forward if the question were solely one of federal law, for federal courts use the "nucleus of operative facts" approach. E.g., *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230–33 (7th Cir. 1987); *Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 645 (7th Cir. 1986); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986). The appellate courts of Illinois are divided, with some following that view and others stating that claims are the same only when identical evidence would support them. Paxton invokes the latter line of cases to argue that it may relitigate. We have reconciled these divergent cases by holding that evidentiary and constitutional arguments are the same as a matter of the Illinois law of preclusion. E.g., *Button v. Harden*, 814 F.2d 382 (7th Cir.1987); *Frier v. Vandalia*, 770 F.2d 699 (7th Cir.1985); *Hagee v. Evanston*, 729 F.2d 510, 513–14 (7th Cir.1984). This reconciliation is provisional, for Illinois has the last word about the preclusive effect of its judgments. Until told otherwise by Illinois, we shall continue to hold that constitutional, statutory, and evidentiary challenges to an administrative decision are different arguments in support of a single claim for relief.

■ Perhaps one could say that the very existence of a 35–day deadline for challenging administrative decisions, a deadline inapplicable to other sorts of contentions, shows that there is more than one claim. Paxton does not make that argument, however, and in another case of administrative action followed by a § 1983 suit the Supreme Court applied principles of preclusion. *Kremer v. Chemical Construction*

*Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). So far as we can tell, Illinois does not make the definition of a "claim for relief" depend on the rules governing timely filing. If two lines of argument have different periods of limitation, someone who files within the shorter period and raises only the arguments governed by the shorter period may not file a second suit, governed by the longer period, after he loses the first—even if he loses the first solely on the ground that the filing was untimely. *Smith v. Chicago*, 820 F.2d 916, 918 (7th Cir.1987); Charles Alan Wright, Arthur Miller & Edward Cooper, 18 *Federal Practice and Procedure* § 4441 (1981). Paxton relies on *O'Hare International Bank v. Zoning Board of Appeals*, 37 Ill. App.3d 1037, 347 N.E.2d 440 (1st Dist. 1976), for the contrary proposition. The initial suit in *O'Hare* was dismissed, at the appellate level for failure timely to serve people who appeared before the Zoning Board in opposition to an application. The plaintiff then refiled the case, naming the proper defendants. The court held this proper, relying on Ill.Rev.Stat. ch. 83 ¶ 24a for the rule that anyone may refile a case within a year of the reversal of a favorable judgment. The court did not discuss ¶ 3–103 or principles of preclusion; it was concerned only with an argument that "the statute of limitations had run" (37 Ill. App.3d at 1038, 347 N.E.2d at 441) on the new suit. It is hard to see how Illinois could allow refiling within a year despite holding that ¶ 3–103 is unyielding. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill.2d 202, 93 Ill.Dec. 360, 486 N.E.2d 893 (1985). *O'Hare* therefore does not offer us the answer to a case involving the problems it omitted.

■ Paxton finally takes a completely different tack, arguing that ¶ 3–103 is so rigid that it is "jurisdictional". A dismissal for want of jurisdiction does not preclude a subsequent suit in a court with jurisdiction. *People ex rel. Scott v. Chicago Park District*, 66 Ill.2d 65, 69, 4 Ill.Dec. 660, 664–665, 360 N.E.2d 773, 775–76 (1976); Ill.Sup. Ct.Rule 273. The appellate court toyed

with that characterization in the Bank's suit. Its principal discussion states:

> The 35–day period for issuance of summons is mandatory and not jurisdictional and failure to secure issuance of summons within the period will not preclude judicial review. However, the 35–day period is intended to insure that the plaintiff cannot unduly delay review, and the plaintiff must show a good faith effort to have the clerk issue the summons within the 35 days to warrant relaxation of the filing period.

*American National Bank & Trust Co. v. City of Chicago,* 132 Ill.App.3d 570 at 573, 87 Ill.Dec. 862 at 863–64, 478 N.E.2d 1 at 2–3 (1985) (citations omitted). Yet the court ended by stating: "In light of our conclusion that the circuit court lacked jurisdiction to review the resolution of the Zoning Board, we need not consider the City's other contentions." 132 Ill.App.3d at 574, 87 Ill.Dec. at 864, 478 N.E.2d at 3. The district court concluded that the appellate court meant the first rather than the second characterization. 636 F.Supp. at 381–83. Paxton complains that the district court did not discuss *Fredman Brothers,* which the Supreme Court of Illinois decided after the appellate court's decision in Paxton's case. *Fredman Brothers,* in conjunction with *Cox v. Board of Fire & Police Commissioners,* 96 Ill.2d 399, 71 Ill.Dec. 688, 451 N.E.2d 842 (1983); and *City National Bank & Trust Co. v. Property Tax Appeal Board,* 97 Ill.2d 378, 73 Ill.Dec. 555, 454 N.E.2d 652 (1983), drew a line between the plaintiff's duty timely to file the action for administrative review, which it called "jurisdictional", and the clerk's duty to serve the summonses, which it called "mandatory". The plaintiff's obligation to furnish the clerk with the summonses must be somewhere in between. The parties vigorously debate just what to make of *Fredman Brothers* and the contradictory language in the appellate court's opinion.

We do not think the precise characterization matters, however, because "jurisdiction" is "a verbal coat of too many colors." *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (Frankfurter, J., dissenting). We need to know what "jurisdiction" means for purposes of preclusion. When a court says it lacks jurisdiction it may mean that the plaintiff came to the wrong court, that he came too early, that he came too late, that he is the wrong party to present the issue, that the legislature did not authorize the court to decide the case (subject matter jurisdiction), that no court may decide the issue (the case or controversy requirement for federal litigation), that the legislature forbade the use of a particular remedy (e.g., the Norris-LaGuardia Act, 29 U.S.C. §§ 101–15, which uses the language of jurisdiction to restrict injunctions), that the defendant has not been haled before the court properly (personal jurisdiction), that the rule adverse to the plaintiff admits of no exceptions (i.e., the court is powerless to relax a jurisdictional rule, such as the time limit for taking an appeal, although it may relax a statute of limitations), that the court must raise the issue even if no party requested a decision (i.e., the sort of rule that may not be waived), that the defendant is immune from suit, that the case is over (a court lacks jurisdiction to reopen its judgments except on a timely motion), or that the case has moved to another court (a trial court lacks jurisdiction to continue hearing the case once the losing party has filed an effective notice of appeal). And there may be more meanings. Cf. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077–79 (7th Cir.1987). *Fredman Brothers* used "jurisdiction" to mean that the court may not excuse noncompliance. If the plaintiff does not file the case within 35 days, nothing anyone can do will save it. We must decide whether failing to tender the summonses within 35 days, another fatal gaffe, is the kind of event that permits the plaintiff to file a second suit.

◼ In the law of preclusion, "jurisdiction" is interchangeable with "not on the merits". A decision "on the merits" bars further litigation; a decision "not on the merits" does not. "Dismissed for want of jurisdiction" is the common conclusion of an opinion that has not reached the merits. See Fed.R.Civ.P. 41(b); Ill.Sup.Ct.Rule 273;

Restatement of Judgments § 49 (1942); Restatement (Second) of Judgments § 20(a) and comment c (1982). So if the court says "you have come to the wrong court, try another" or "this suit is premature, wait until the case is ripe" it will use the language of jurisdiction. Such adjudications, not "on the merits", may be followed by litigation in the right court or at the right time. But if the court says "you are too late" or otherwise wraps up the case in a way that indicates that the plaintiff has irrevocably failed, the use of jurisdictional language does not mean that the plaintiff may try again. A decision may be "on the merits" for purposes of preclusion even though the court did not resolve the merits. A dismissal for want of prosecution has this effect, see *Kimmel v. Texas Commerce Bank*, 817 F.2d 39 (7th Cir. 1987), as does a dismissal for laches. *Smith v. Chicago, supra.* The decision is on the merits (and hence not jurisdictional) for purposes of preclusion when the litigant had an *opportunity* to receive an adjudication from that court. That he bollixed his opportunity by starting the suit too late or failing to prosecute it properly does not justify exposing the defendant to another round. This is also the fundamental justification for claim preclusion (merger and bar), which wipes out an opportunity to raise an issue that the plaintiff did not even plead in the first case, as Paxton neglected to plead its constitutional arguments in state court.

When the first suit is dismissed under a statute of limitations, that is the end. Paxton concedes as much. A dismissal under the statute of limitations means: "You came too late, and you did not offer a sufficient reason to excuse the delay." The Bank's suit (on Paxton's behalf) in state court was dismissed because of a time limit. All it means to say that the 35-day rule is jurisdictional is: "You came too late, and no matter the reason we may not excuse the delay." The different nomenclature does not obscure the functional identity. In each case the plaintiff loses because it acted too late and did not have an adequate excuse. In each case the disposition is meant to be conclusive. It does not invite refiling at another time or in another court. That in one of the cases no excuse *could* have sufficed hardly justifies a second round of litigation; any distinction should run in the other direction.

The courts of Illinois have not articulated the difference between jurisdictional and other dismissals in the terms we have used, but the state's cases establish the pattern on which we have elaborated. Illinois treats the following kinds of decisions as "on the merits" for purposes of preclusion: failure to comply with a special (claim-specific) period of limitations, *Muscare v. Voltz*, 107 Ill.App.3d 841, 843, 63 Ill.Dec. 689, 691, 438 N.E.2d 620, 622 (1st Dist.1982); failure to comply with discovery and other pretrial orders, *Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 122, 22 Ill. Dec. 519, 523, 382 N.E.2d 1217, 1221 (1978); failure to amend the complaint in a timely fashion, *Brainerd v. First Lake County Nat'l Bank*, 1 Ill.App.3d 780, 275 N.E.2d 468 (2d Dist.1971). It treats these decisions as not on the merits: filing in the wrong court, *Saint Boniface Roman Catholic Church v. Wolf*, 302 Ill. 204, 134 N.E. 1 (1922), *Style Builders, Inc. v. Fuernstahl*, 32 Ill.App.3d 272, 276, 336 N.E.2d 369, 372 (1st Dist.1975); filing too soon, *Pratt v. Baker*, 79 Ill.App.2d 479, 482, 223 N.E.2d 865, 867 (2d Dist.1967) (dictum); filing in a court without subject-matter jurisdiction, *Patzner v. Baise*, 144 Ill.App.3d 42, 44, 98 Ill.Dec. 251, 252–53, 494 N.E.2d 178, 179–80 (2d Dist.1986); taking a premature appeal, *Weiland Tool & Mfg. Co. v. Whitney*, 44 Ill.2d 105, 113–14, 251 N.E.2d 242, 247 (1969); seeking an unavailable remedy, *Foreman v. Martin*, 26 Ill.App.3d 1028, 1030, 325 N.E.2d 378, 379–80 (2d Dist.1975). The distinction between "come back later" or "go someplace else", on the one hand, and "you're too late", on the other, is part of the fabric of Illinois law. Paxton lost because it furnished the summonses too late. A court of Illinois therefore would hold the judgment preclusive in future litigation, and we must do likewise.

AFFIRMED.